Filed 3/30/21  P. v. Pena CA4/1 CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D076480 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD277208) |
| LARRY PENA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Charles G. Rogers, Judge.  Affirmed as modified.

Kenneth J. Vandevelde, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Andrew S. Mestman and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

Defendant Larry Pena committed multiple theft-related offenses at stores in the San Diego area. After having charged Pena with two felonies and three misdemeanors,[1] the People amended the charging document to charge Pena with a single felony and three misdemeanors; on that same date, Pena entered a plea of guilty to all of the charges. Pena admitted that he committed the offenses while out on bail in another case, and further admitted that he had suffered four prison priors. According to the record, Pena's "plea to the sheet" was in exchange for the trial court's commitment that the court would resentence him in a separate case, combining the sentence for that case with the sentence for Pena's current offenses, and that the court would impose an overall sentence not to exceed seven years four months, split between no more than five years in custody and two years four months on mandatory supervision. The court sentenced Pena to seven years four months, and imposed a single one-year prison prior enhancement for one of Pena's prison priors, and struck the other three prison priors.

After Pena was sentenced and while an appeal was pending, Senate Bill No. 136 became effective; the legislation amended Penal Code[2] section 667.5, subdivision (b) to eliminate the one-year enhancement for nonsexually violent prison priors.

---

[1] In the first charging document filed in this case, the People charged Pena with a single felony and a single misdemeanor; approximately two months later, the complaint was amended to charge Pena with two felonies and three misdemeanors.

[2] Further statutory references are to the Penal Code unless otherwise indicated.

On appeal, Pena contends that the one-year prison prior enhancement that the court imposed pursuant to section 667.5, subdivision (b) must be stricken, because his prison prior was for a nonsexually violent offense, which no longer qualifies for the prison prior enhancement. Pena also challenges several conditions of his mandatory supervision under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), and on constitutional vagueness and overbreadth grounds.

The People concede that the one-year prison prior term imposed must be stricken, and we agree. We further conclude that Pena's arguments regarding the conditions of his mandatory supervision are without merit.

We therefore strike the section 667.5 subdivision (b) enhancement from Pena's sentence and affirm the judgment as modified.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*[3]

On April 30, 2018, while Pena was out of custody on bail on a grand theft case from Riverside County (case No. SWF1800214), Pena entered the Home Depot store located on Sports Arena Boulevard in San Diego. Pena placed an air compressor, which was valued at less than $950, inside his cart, and left the store without paying for the air compressor. Pena loaded the air compressor into his vehicle. While driving through the parking lot, Pena stopped next to a customer's pickup truck, which had several tools in the bed of the truck. Pena got out of his vehicle and took $1,838 worth of tools, including cordless drills and cordless hammers, from the truck bed.

---

[3]    Because Pena pled guilty to the offenses, we take the factual background from the evidence presented at the preliminary hearing and the facts admitted by Pena during his guilty pleas.

Just over two months later, on July 8, 2018, Pena entered a Dixieline Lumber store located on Lomas Santa Fe Drive in Solana Beach. Pena took a $300 Sawzall power tool and ran out of the store without paying for the item. Once outside of the store, Pena got into the rear passenger seat of a silver sedan that had been parked in front of the store. Pena fled the scene in the silver sedan. Approximately thirty minutes later, Pena entered another Dixieline Lumber store. Pena grabbed two $380 Dewalt grinder tool kits and walked toward the front doors of the store, where he knelt down behind a display near the checkout counter. While Pena was crouched down, a silver Chrysler sedan pulled up to the front of the store. An unknown man got out of the sedan, opened both passenger side doors and began to walk toward the store. Pena motioned toward the man while still in a crouched position. Just as the man entered the store, Pena ran out of the store, still holding both grinder tool kits, and got into the silver sedan, which was being driven by an unidentified woman. He fled the scene in the silver sedan.

B. *Procedural background*

On June 11, 2019, the San Diego County District Attorney filed an amended information charging Pena with grand theft of personal property (§ 487, subd. (a), count 1), and three counts of misdemeanor shoplifting (§ 459.5, counts 2, 3 & 4). The amended information alleged that Pena committed count 1 while he was out on bail in a Riverside County case (§ 12022.1, subd. (b)), and further alleged that Pena had suffered four prison priors (§ 667.5, subd. (b)).[4]

As described by both parties, on the same day that the District Attorney amended the information, Pena entered into a "negotiated plea

---

[4] The parties agree that Pena's four prison priors were for nonsexually violent offenses.

4

agreement" with the trial court, rather than with the prosecutor. Pena pled guilty to all charges and admitted all of the allegations in exchange for certain sentencing commitments from the court—i.e., that the court would resentence Pena on the two grand theft convictions in his Riverside County case (case No. SWF1800214) by combining them with the counts in the current case, pursuant to California Rules of Court, rule 4.452(a), such that the overall sentence would not exceed seven years four months, to be split between no more than five years in custody and two years four months on mandatory supervision, and Pena would receive all of the custody credits that he had accrued in both cases.

The trial court imposed the maximum sentence contemplated by the plea agreement—i.e., seven years four months, split between five years in custody and two years four months of mandatory supervision with several terms and conditions. In reaching this sentence, the court imposed the upper term of three years on the first grand theft count and one-third the middle term of eight months on the second grand theft count in the Riverside County case. With respect to the San Diego County case, the court imposed a consecutive sentence of one-third the middle term of eight months for the grand theft count, plus two years for the out-on-bail enhancement and one year for one prison prior enhancement. The court struck Pena's three remaining prison prior enhancements in the interest of justice (§ 1385), and sentenced Pena to credit for time served on the misdemeanor shoplifting counts.

Pena filed a timely notice of appeal in conjunction with a request for a certificate of probable cause. The trial court denied Pena's request for a certificate of probable cause.

5

## III.

## DISCUSSION

A. *The parties agree that the trial court's imposition of a one-year enhancement imposed under section 667.5, subdivision (b) must be stricken pursuant to a recent change in the law*

Pena contends that the trial court's imposition of a one-year prison prior enhancement under section 667.5, subdivision (b) must be stricken because Senate Bill No. 136 amended the law to eliminate the one-year prison prior enhancement except with respect to certain sexually-violent offenses. The People concede that the one-year enhancement imposed under section 667.5, subdivision (b) must be stricken pursuant to Senate Bill No. 136.[5]

On October 8, 2019, after Pena was sentenced, the Governor signed Senate Bill No. 136, which amended section 667.5, subdivision (b). (*People v. Lopez* (2019) 42 Cal.App.5th 337, 340.) Under the amendment to section 667.5, subdivision (b), the one-year enhancement in that provision applies only if the defendant's prior prison term was "for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code." (Stats. 2019, ch. 590, § 1.) Senate Bill No. 136's amendment to

---

[5]    At the time the parties were briefing this case, there was an existing split of authority as to whether a defendant who pled guilty and was sentenced pursuant to a plea agreement had to obtain a certificate of probable cause in order to be able to challenge that sentence based upon a subsequent retroactive change in the law. Despite this split of authority, the People took the position that Pena was not required to obtain a certificate of probable cause to seek the ameliorative effect of Senate Bill No. 136. After the People filed a respondent's brief, the Supreme Court issued an opinion in *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*), in which the Supreme Court determined that no certificate is required when a defendant who pled guilty appeals from his or her sentence based upon a subsequent beneficial retroactive change in the law. (*Id.* at p. 698.)

section 667.5, subdivision (b) became effective on January 1, 2020. (*People v. Lopez*, at p. 341.)

As the People concede, this amendment applies retroactively to all defendants whose judgments are not yet final as of that date under the authority of *In re Estrada* (1965) 63 Cal.2d 740, 745, given that the elimination of the one-year enhancement for offenses other than sexually violent offenses constitutes an ameliorative change in the law. (Cf. *Stamps, supra,* 9 Cal.5th at p. 699 [under authority of *Estrada*, beneficial change in the law regarding granting discretion to trial court to strike a serious felony enhancement in the interests of justice applies retroactively to judgments that are not yet final].) Pena's prior offense for which the prison prior was imposed was not a sexually violent offense. Pena is therefore entitled to retroactive application of the amended law.

The People further concede that under the particular circumstances of Pena's plea, the proper remedy is for this court to strike the one-year enhancement because the trial court has no authority to impose a different sentence on remand. We agree with this assessment, and accept the People's concession.[6] We therefore strike the one-year prior prison enhancement that

---

[6]   In *Stamps, supra*, 9 Cal.5th at p. 707, the Supreme Court concluded that where the defendant has entered into a plea agreement and has pled guilty in exchange for a specific prison term, and there is no indication that the Legislature "intended to overturn long-standing law that a court cannot unilaterally modify an agreed upon term [of the negotiated plea agreement] by striking portions of it" (*id.* p. 701), the proper remedy is to remand to allow the defendant to decide whether to seek the trial court's exercise of its newly granted discretion to strike the serious felony enhancement; if, on remand, the defendant seeks the trial court's exercise of its discretion and the court decides to strike the enhancement, the prosecution should be offered the option to accept the modification of the plea bargain to reflect the lower sentence or to withdraw from the agreement entirely. (*Id.* at pp. 706–707.) In addition, if the trial court decides to strike the serious felony

7

was imposed pursuant to section 667.5, subdivision (b) and order the sentence modified accordingly.

B. *Pena's challenges to various conditions of supervised release*

Pena challenges a number of conditions of the mandatory supervision order that the trial court imposed on him pursuant to his term of release. Specifically, Pena challenges condition 1(m) (the electronics search condition);[7] condition 1(k) (the travel condition);[8] condition 1(j) (the law enforcement contact condition);[9] and condition 5(h), which prohibits Pena

---

enhancement, the court may also choose to withdraw its approval of the plea agreement. (*Id.* at p. 708.) This case does not involve a plea agreement for which a stipulated sentence is one of the material terms of the negotiated agreement between the prosecution and the defendant. Rather, the trial court set a *maximum* term to which Pena could be sentenced, or a "lid," in exchange for Pena's agreement to plead guilty to the entirety of the information. Because this case does not involve a plea agreement with a stipulated sentence, we conclude that the portion of *Stamps* discussing the appropriate remedy in a situation that involves a plea agreement with a stipulated sentence is inapplicable. Therefore, no remand is necessary. We accept the People's concession that the appropriate remedy in this case is to strike the prison prior enhancement on appeal.

[7] Condition 1(m) requires that Pena "[s]ubmit person, vehicle, residence, property, personal effects, computers, and recordable media — including cell phones [—] to search at any time with or without a warrant, and with or without reasonable cause, when required by [a probation officer (P.O.)] or law enforcement officer."

[8] Condition 1(k) requires that Pena obtain his parole officer's approval prior to traveling outside San Diego County.

[9] Condition 1(j), requires that Pena "[p]rovide true name, address, and date of birth if contacted by law enforcement," and "[r]eport contact or arrest in writing to the P.O. within 7 days" with "the date of contact/arrest, charges, if any, and the name of the law enforcement agency."

8

from being in bars, liquor stores, or other places where alcohol is the "main item for sale."[10]

Although Pena did not obtain a certificate of probable cause prior to appealing and challenging certain conditions of his mandatory supervision period, the People concede that Pena was not required to obtain a certificate of probable cause in order to challenge these conditions, because neither his plea agreement with the court nor the appellate waiver that he signed, specified the terms of the mandatory supervision that the court would impose. We agree with the People's analysis and accept the People's concession that Pena was not required to obtain a certificate of probable cause in order to challenge the conditions of his mandatory supervision. (See *People v. Patton* (2019) 41 Cal.App.5th 934, 940, 942–943 (*Patton*) [defendant did not need a certificate of probable cause to challenge a probation condition because his plea and appellate waiver did not specify the terms of probation].)

1. *Legal standards on review from challenges to conditions of mandatory supervision*

This case involves the imposition of a period of mandatory supervision under the Criminal Justice Realignment Act of 2011. The Criminal Justice Realignment Act of 2011 authorizes a trial court to impose a "split sentence," in which a person convicted of certain "low-level" felony offenses (*People v. Scott* (2014) 58 Cal.4th 1415, 1418), such as the ones Pena committed, serves a portion of his sentence in county jail and the remainder of the sentence in the community on mandatory supervision. (§ 1170, subds. (h)(5) & (7).) When a defendant serves a period of mandatory supervision, "the defendant

---

10    Condition 5(h) prohibits Pena from being "in places, except in the course of employment, where you know, or a P.O. or other law enforcement officer informs you, that alcohol is the main item for sale."

9

shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation." (*Id.*, subd. (h)(5)(B).)

Courts generally have "broad discretion in fashioning terms of supervised release, in order to foster the reformation and rehabilitation of the offender, while protecting public safety." (*People v. Martinez* (2014) 226 Cal.App.4th 759, 764 (*Martinez*).) A condition of mandatory supervision may be challenged on the same grounds as a condition of parole, which in turn, may be challenged based on the same standards for challenging probation conditions. (*Id.* at pp. 763–764.)[11]

A condition of mandatory supervision may be challenged on state-law grounds pursuant to the standards set forth in *Lent, supra,* 15 Cal.3d at p. 486. (*Martinez, supra*, 226 Cal.App.4th at p. 764.) Under *Lent*, a court abuses its discretion when it imposes a term or condition that " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent*, at p. 486.) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a . . . term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).) A trial court's application of the *Lent* test is reviewed for abuse of discretion. (*Olguin,* at p. 379.)

---

[11] The question whether the validity of a condition imposed pursuant to a term of mandatory supervision should be assessed in the same manner as a probation condition is currently pending before the California Supreme Court. (See *People v. Bryant* (2019) 42 Cal.App.5th 839, review granted Feb. 19, 2020, S259956.) Until the Supreme Court comments on the issue, we will continue to apply the law as expressed in *Martinez, supra*, 226 Cal.App.4th at pages 763 to 764.

A condition of mandatory supervision may also be challenged on constitutional grounds, including principles prohibiting vagueness and overbreadth. "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness. [Citation.] A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).) " ' "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." ' " (*Patton, supra,* 41 Cal.App.5th at p. 946.)

When a condition of mandatory supervision is challenged on constitutional grounds, we apply a de novo standard of review. (*Martinez, supra,* 226 Cal.App.4th at p. 765.) Challenges to conditions of mandatory supervision ordinarily must be raised in the trial court, and if they are not, appellate review of those conditions is forfeited. (See *People v. Welch* (1993) 5 Cal.4th 228, 234–235.) An exception applies to the forfeiture rule if the challenge presents a facial constitutional challenge presenting "a pure question of law, easily remediable on appeal by modification of the condition." (*Sheena K., supra,* 40 Cal.4th at p. 888.) The forfeiture rule does not apply in such a case because a facial constitutional challenge " 'present[s] [a] "pure question[ ] of law that can be resolved without reference to the particular sentencing record developed in the trial court" ' " (*id.* at p. 889), and "does not

11

require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts—a task that is well suited to the role of an appellate court." (*Id.* at p. 885.)

### 2. *The electronics search condition*

At sentencing, Pena objected to the electronics search condition on the ground that no nexus existed between the condition and the offenses of which he was convicted, and that the condition was unconstitutionally overbroad. The court rejected Pena's argument and approved the electronics search condition.[12]

Pena extends his argument on appeal, contending that the electronics search condition requiring that he submit his "computers, and recordable media, including cellphones, to search at any time with or without a warrant, and with or without reasonable cause, when required by P.O. or law enforcement officer," is unreasonable as applied in this case under the authority of *Lent* and *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*). In the alternative, Pena contends that even if this court concludes that the imposition of the electronics search condition is reasonable under *Lent*, we should conclude that the condition is unconstitutionally overbroad as applied to him under the rationale of the dissenting opinion in *Ricardo P.*

---

[12] The trial court initially mentioned to defense counsel that it appeared to the court that "a telephone was probably used" in the commission of one of the offenses in the current case because "the confederates pull up in the car outside just as he's walking out [of the store] with this thing that he puts in the backseat of the car." The prosecutor also noted that Pena had "18 theft convictions throughout his history," and that "as a matter of common sense and practicality, . . . often those items are then sold and traded on the internet on — via text messages, via social media, et cetera. All of those things, that fencing, is . . . related to these offenses. And though it wasn't charged or a part of the direct offense, it is reasonably related. And certainly, there is a sort of nexus in that regard."

a. *The electronics search condition is valid under* Lent *and* Ricardo P.

As previously discussed, in *Lent*, the Supreme Court adopted a conjunctive three-part test for determining the reasonableness of a probation condition; only if all three prongs are satisfied will a condition be invalidated. (*Olguin*, *supra*, 45 Cal.4th at p. 379.) Thus, a condition of probation will be determined to be invalid only if it " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent*, *supra*, 15 Cal.3d at p. 486.)

The People contend that the electronics search condition does have a relationship to the crimes for which Pena has been convicted and was sentenced. Specifically, the People contend that the trial court could reasonably infer that Pena utilized a cell phone to coordinate with his accomplice during the Dixieline theft that gave rise to count 4, given the precise timing of the accomplice pulling up to the front of the store just as Pena was reaching the front of the store. Pena argues that the evidence demonstrates that no cell phone was used, citing the fact that Pena used his hands to gesture toward one of his accomplices who was outside the store, and the lack of any reference to the use of a cell phone from the preliminary hearing testimony provided by an officer who reviewed surveillance footage from inside the store. However, the officer also testified that there was no surveillance footage of Pena taking the items from the shelves. Thus, the fact that the officer did not describe the use of a cell phone in the footage that he viewed does not suggest that no cell phone was used in the crime. Rather, given the precise timing of the accomplices to this theft that ensured that the get-away car was in front of the store waiting for Pena just as he reached the front of the store, the court could reasonably infer that Pena used some type

of electronic communication with his accomplices to coordinate the timing. Thus, the trial court could reasonably have concluded that there is a nexus between the use of an electronic device and Pena's commission of at least one of the offenses for which he was convicted. Given this nexus, the condition that Pena submit his electronic devices, including cell phones, to search is reasonably related to one of the offenses for which Pena was sentenced. The condition thereby fails the first prong of the *Lent* analysis for invalidity, and we may uphold the condition on this basis.[13]

The record also demonstrates that even if an electronics search condition was not reasonably related to any of Pena's current theft crimes, the imposition of such a condition fails the third prong of the *Lent* analysis for invalidity because the condition is reasonably related to preventing Pena's future criminality, given Pena's criminal record. (See *Olguin*, *supra*, 45 Cal.4th at p. 380 [even if a condition is unrelated to the crime defendant was convicted of committing and relates to conduct, not itself criminal, "the condition is valid as long as the condition is reasonably related to preventing future criminality"].) In *Ricardo P.*, *supra*, 7 Cal.5th at p. 1119, the Supreme Court clarified the parameters of the *Lent* test's third prong, i.e., whether the condition " ' "requires or forbids conduct which is not reasonably related to future criminality." ' " *Ricardo P.* involved a juvenile who was granted probation after admitting to two counts of burglary. The juvenile court imposed drug conditions because the minor had indicated that he had

_____

13    Although Pena relies heavily on the analysis in *Ricardo P.*, *supra*, 7 Cal.5th 1113, it is clear that *Ricardo P.* dealt not with the first prong of the *Lent* analysis, but with the third—i.e., whether a condition that is unrelated to the crime the defendant was convicted of committing and that relates to conduct that is itself not criminal, but is " ' "reasonably related to future criminality." ' " (*Id.* at p. 1119.)

previously smoked marijuana.  The court also imposed a condition requiring that the minor "submit to warrantless searches of his electronic devices, including any electronic accounts that could be accessed through these devices." (*Id.* at p. 1115.)  However, nothing in the record indicated that the minor had ever used electronic devises to commit, plan, discuss or consider criminal conduct.  In imposing the condition, the juvenile court relied on its own "observation that teenagers 'typically' brag about such drug use on social media." (*Id.* at pp. 1117, 1119.)

The *Ricardo P.* court concluded that even if one were to accept as true the trial court's premise about the tendency of teenagers to brag about drug use on social media, an abstract or hypothetical relationship between the probation condition and preventing future criminality was insufficient to demonstrate that the condition, which imposed a significant burden on the juvenile, was reasonably related to future criminality. (*Ricardo P., supra*, 7 Cal.5th at pp. 1119–1120.)  The third prong of the *Lent* test "contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Ricardo P.*, at pp. 1122–1123.)  The *Ricardo P.* court concluded that this condition significantly burdened the juvenile's privacy interests, given how much sensitive and confidential information can be accessed on devices such as cell phones, and that the limited justification for the condition did not support such a significant burden. (*Ibid.*)  Accordingly, the court concluded that the electronics search condition was not reasonably related to the juvenile's future criminality and was therefore, invalid under *Lent, supra*, 15 Cal.3d 481. (*Ricardo P.*, at p. 1128.)

In reaching this conclusion, the Supreme Court expressly noted that its determination was not a blanket invalidation of all electronics search

15

conditions and stated that there might be cases in which "the probationer's offense *or personal history* may provide the . . . court with a sufficient factual basis from which it can determine that an electronics search condition is a proportional means of deterring the probationer from future criminality." (*Ricardo P.*, at pp. 1128–1129, italics added.)  In this case, the record demonstrates that Pena *has* used an electronic device in connection with previous offenses.  For example, in the past, Pena used an electronic device to access an online mobile application, OfferUp, to sell Nixon watches that he had stolen.  Thus, unlike the record in *Ricardo P.*, in which there was "nothing [to] suggest[ ] that Ricardo has ever used an electronic device or social media in connection with criminal conduct" (*id.* at p. 1122), the record here clearly shows that Pena, has, at a minimum, used an electronic device in connection with his criminal conduct in the past.  Thus, Pena's record is qualitatively different from that of the juvenile in *Ricardo P.*  Given Pena's criminal record and his personal history of drug use and repeated thefts in connection with his drug habit, the burden that an electronics search condition imposes on Pena is *not* substantially disproportionate to the state's legitimate interests in promoting Pena's rehabilitation and the successful completion of his period of mandatory supervision without further criminal conduct.  We therefore conclude that the imposition of an electronics search condition in this case is reasonable and not invalid under *Lent*.

      b.   *The electronics search condition is not constitutionally overbroad as applied to Pena*

Pena also posits in a cursory argument that if this court concludes that the electronics search condition is a reasonable condition under *Lent*, the court should consider whether the condition is nevertheless unconstitutionally overbroad.  Pena relies on the dissenting opinion written by Chief Justice Cantil-Sakauye in *Ricardo P.* as support for his contention.

(See *Ricardo P.*, *supra*, 7 Cal.5th at pp. 1129–1140 (conc. & dis. opn. of Cantil-Sakauye, C.J.).) However, for reasons similar to those underlying our rejection of Pena's contention that application of the majority opinion in *Ricardo P.* renders the imposition of an electronics search condition unreasonable under *Lent*, we similarly conclude that the imposition of this condition is not constitutionally overbroad as applied to Pena. Specifically, the electronics search condition is sufficiently tailored to appropriate considerations involved in supervising Pena and in assuring that he remains law abiding. The record demonstrates that, at a minimum, Pena has used an electronic device in connection with his theft offenses in the past; specifically, he has used an electronic device to sell stolen items for cash. In addition, as the trial court found, Pena's current offenses demonstrate a sophistication and coordinated timing that suggest that he utilized a cell phone in conducting at least one of the thefts. The electronics search condition is sufficiently tailored to the state's interest in supervising Pena and will provide Pena's parole officer the necessary oversight to ensure that Pena remains law-abiding and does not engage in similar behavior during his period of mandatory supervision. We therefore conclude that Pena's constitutional challenge to the electronics search condition fails.

   3. *The travel condition*

Pena argues that the requirement in mandatory supervision condition 1(k) requiring that he obtain his parole officer's "consent" before leaving San Diego County infringes on his constitutional right to intrastate travel and is not narrowly tailored, causing the condition to be constitutionally overbroad. Pena further argues that this condition is impermissibly overbroad because it "delegates standardless discretion" to his parole officer. Finally, Pena argues that the condition is impermissibly vague because it "authorize[s] restrictions

17

on a defendant's constitutional rights 'on an ad hoc and subjective basis.' "
(Italics omitted.)  (See *Sheena K., supra*, 40 Cal.4th at p. 890).

Pena did not raise any objection to the imposition of the travel condition in the trial court.  He has therefore forfeited any contention that the condition is unconstitutional in its application to him.  We will consider Pena's contentions only to the extent that he is arguing that the travel condition is constitutionally invalid on its face.  (See *Sheena K., supra*, 40 Cal.4th at p. 887 [a constitutional claim may be raised for the first time on appeal only where it concerns a challenge that presents a pure question of law, such that the issue can be resolved as a matter of law without reference to the sentencing record].)

### a. *The travel condition is not facially overbroad*

#### i. *Pena has forfeited his contention that the travel condition is overbroad because it is not sufficiently tailored to the state's interests in his rehabilitation*

Pena argues that the travel condition is unconstitutionally overbroad because it "is not closely tailored to the state's interests."  (Boldface and capitalization omitted.)  Pena relies on *In re White* (1979) 97 Cal.App.3d 141, in which an appellate court concluded that a probation condition that prohibited the probationer from entering a particular sector of Fresno, California was unconstitutionally overbroad.  Pena asserts that, like the travel prohibition in *In re White*, "[t]here is no direct relationship between his offenses and his right to travel outside the county."  Pena's argument demonstrates that he is relying on the particular facts of his case to demonstrate the purported overbreadth of the condition.  In other words, Pena is arguing that the condition is unconstitutionally overbroad because there is no relationship between *his* offenses and traveling out of the county; this demonstrates that he is raising an as-applied constitutional challenge.

18

As noted, Pena has forfeited any as-applied challenge by failing to object to the travel condition in the trial court. (See, e.g., *Sheena K.*, *supra*, 40 Cal.4th at p. 885 [a defendant who did not object to a condition at sentencing may raise a challenge to that condition on appeal only if the defendant's appellate claim "amount[s] to a 'facial challenge' " and the determination whether the condition is constitutionally defective "does not require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts—a task that is well suited to the role of an appellate court"]; *People v. Pirali* (2013) 217 Cal.App.4th 1341, 1347 ["[a]lthough a probation condition may be overbroad when considered in light of all the facts, only those constitutional challenges presenting a pure question of law may be raised for the first time on appeal"].)[14] We therefore decline to address this contention.

ii.  *The travel condition is not facially overbroad merely because it grants the parole officer some discretion to withhold consent to travel*

Pena next argues that the travel condition is "also overbroad because it delegates standardless discretion to the parole officer." (Boldface and capitalization omitted.) Although Pena seems to suggest that this is a facial challenge to the condition, he also appears to challenge the condition as applied to him, given his personal circumstances. For example, at one point, Pena asserts that "the travel restriction on Mr. Pena bears no relation to *his* rehabilitation and reform." (Italics added.) To the extent that Pena is

_____

[14]  To be clear, Pena does not argue that requiring preapproval for travel outside of the county is unconstitutional in all circumstances. We therefore do not address the question of whether the provision is unconstitutionally overbroad on its face on the ground that it is not sufficiently tailored to the state's interests in supervising individuals who are in the community pursuant to a term of mandatory supervision.

attempting to challenge the discretionary power given to his parole officer to withhold consent for a request to travel as applied to Pena, we conclude that Pena may not raise this challenge because he did not object to the imposition of this condition on any ground, let alone on the ground that it improperly delegates standardless discretion to his parole officer.  (See *Sheena K.*, *supra*, 40 Cal.4th at p. 885.)

To the extent, however, that Pena's challenge to the travel condition is that in any circumstance, granting a parole officer the discretion to withhold permission for travel outside of the county is constitutionally overbroad, we will consider this contention.[15]

"If a probation condition serves to rehabilitate and protect public safety, the condition may 'impinge upon a constitutional right otherwise enjoyed by the probationer, who is "not entitled to the same degree of constitutional protection as other citizens." ' "  (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1355.)  The constitutional right to travel "is not absolute and may be reasonably restricted in the public interest."  (*People v. Relkin* (2016) 6 Cal.App.5th 1188, 1195 (*Relkin*).)  "Although criminal offenders placed on probation [or, as in this case, mandatory supervision] retain their constitutional right to travel, reasonable and incidental restrictions on [such an individual's] movement are permissible."  (*People v. Moran* (2016) 1 Cal.5th 398, 406 (*Moran*) [condition that the defendant stay away from all stores in the same chain he burglarized reasonable].)  In fact, "[i]mposing a limitation on [a probationer's] movements as a condition of probation is common, as probation officers' awareness of [a probationer's] whereabouts

---

15    Pena argues that the condition permits a parole officer to prohibit a supervisee "from traveling anywhere outside of San Diego County for any reason or for no reason at all."  (Italics omitted.)

20

facilitates supervision and rehabilitation and helps ensure [a probationer] . . . compl[ies] with the terms of [his] conditional release." (*Ibid.*) There is no reason why individuals serving out a sentence on mandatory supervision may not be similarly subject to such travel limitations. Similarly, the constitutional right to associate " 'may be restricted if reasonably necessary to accomplish the essential needs of the state and public order.' " (*People v. Lopez* (1998) 66 Cal.App.4th 615, 627–628 (*Lopez*).)

The fact that the travel condition gives the parole officer some discretion as to whether to grant a supervisee's request to leave the county does not render the condition facially unconstitutional. Rather, a condition "should be given 'the meaning that would appear to a reasonable, objective reader,' " and in giving it this meaning, one may presume that a probation officer will not withhold approval for irrational or capricious reasons. (*Olguin*, *supra*, 45 Cal.4th at p. 383.) Indeed, the grant of discretionary authority to a supervising officer includes an implicit requirement that the discretion be exercised reasonably. (See *People v. Stapleton* (2017) 9 Cal.App.5th 989, 996–997 (*Stapleton*) ["A probation officer cannot issue directives that are not reasonable in light of the authority granted to the officer by the court. Thus, a probation officer cannot use the residence condition to arbitrarily disapprove a defendant's place of residence"]; see also *People v. Arevalo* (2018) 19 Cal.App.5th 652, 658 [condition giving probation officer approval power over probationer's residence "presumes a probation officer will not withhold approval for irrational or capricious reasons"].) Thus, the fact that a condition permits a parole officer to exercise some discretion to grant or deny a supervisee's request to leave the county "does not grant [that] officer the power to issue arbitrary or capricious directives that the court itself could not order." (*Stapleton*, at p. 997, citing *People v.*

*Kwizera* (2000) 78 Cal.App.4th 1238, 1240–1241 [probation condition requiring a probationer to obey directions from his probation officer does not give probation officer "power to impose unreasonable probation conditions"].)

Further, in any given case, if a parole officer were to deny, for an arbitrary reason, a request to leave the county, the supervisee may file a petition for modification of her probation condition to address any improper exercise of the discretion granted to the parole officer. (See Pen. Code, §§ 1170, subd. (h)(5)(B), 1203.2, subd. (b)(1), 1203.3, subd. (a); see also *People v. Keele* (1986) 178 Cal.App.3d 701, 708 [trial court retains jurisdiction to review probation officer's actions].)

We conclude that a mandatory supervision condition that requires a supervisee to obtain approval from his parole officer before leaving the county is not facially overbroad merely because it grants the parole officer some discretion in granting or denying such a request.

b. *The travel condition is not void for vagueness*

Pena also challenges the travel condition on the ground that it is "impermissibly vague" because it "permits the parole officer to impair Mr. Pena's constitutional rights 'on an ad hoc and subjective basis.' " He asserts that this condition "permits the parole officer to virtually preclude Mr. Pena from traveling anywhere outside the county to associate with anyone," and suggests that this condition is similar to one invalidated in *Sheena K.*, *supra*, 40 Cal.4th at page 890, which prohibited the probationer from associating with anyone " 'disapproved of by probation.' " (*Ibid.*)

To avoid invalidation on vagueness grounds, a probation condition " 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated.' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 890; *Stapleton*, *supra*,

22

9 Cal.App.5th at p. 994.) A vague condition not only fails to provide adequate notice, but also " ' "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." ' " (*Sheena K.*, at p. 890.)

Unlike the condition at issue in *Sheena K.*, which provided no notice to the probationer as to which persons might be " 'disapproved of by probation,' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 890), the travel condition at issue here adequately informs Pena what is required of him: before leaving San Diego County, he must get approval from his parole officer. This is precise and clear, and there is no ambiguity as to how Pena can fulfill the condition. It is also clear how the condition may be violated: Pena violates this condition if he leaves the county without first obtaining the requisite approval. Thus, the condition does not "impermissibly delegate basic policy matters" to those who are deciding whether the condition has been met. (*Ibid.*) There is no discretion by the parole officer or a court as to whether Pena has satisfied this condition, and, thus, the condition is not impermissibly vague.[16]

4. *The law enforcement contacts condition*

Pena contends that mandatory supervision condition 1(j), which requires that he "[p]rovide true name, address, and date of birth if contacted by law enforcement," and "[r]eport contact or arrest in writing to the P.O. within 7 days" by providing "the date of contact/arrest, charges, if any, and the name of the law enforcement agency," is unconstitutionally vague and overbroad on its face. Specifically, Pena asserts that the word "contact" is

---

[16] While the parole officer will have discretion to approve of the proposed travel or disapprove of it,]this does not make the condition "vague"; Pena is clearly apprised of what *he* must do in order to comply with the condition.

inherently vague because it leaves him to guess what sorts of encounters with law enforcement he must report. He further contends that the condition is overbroad because it sweeps "within its scope contacts with law enforcement that are unrelated to the officer's law enforcement responsibilities, including even casual or social occasions, that [are] not worthy of reporting[.]"[17] We apply the same legal standards for assessing vagueness as identified in section III.B.3.b, *ante*, to Pena's contention that this condition is unconstitutionally vague.

Pena relies on *Relkin, supra,* 6 Cal.App.5th 1188, in support of his argument that condition 1(j) is unconstitutionally vague. The *Relkin* court considered a probation condition that required the defendant "to 'report to the probation officer, no later than the next working day, any arrests or any contacts with or incidents involving any peace officer.' " (*Id.* at p. 1196.) The defendant argued that the phrases " 'contacts with' and 'incidents involving' peace officers are uncertain because one cannot determine whether those terms include occasional conversation[s] with a police officer who lives down the street, answering an officer's questions as a witness to a crime, or participation in a demonstration where officers are present." (*Id.* at pp. 1196–1197.) The defendant also contended that the condition was unconstitutionally vague "because it is subject to the ' "whim of any police or probation officer," ' and infringes on [the defendant's] rights under the First Amendment of the United States Constitution." (*Relkin,* at p. 1197.)

---

[17] Pena did not object to the imposition of the law enforcement contacts condition. However, his challenges to the condition address the constitutionality of the provision on its face, and not as applied to him; as such, Pena has not forfeited his challenges to the law enforcement contacts condition. (See *Sheena K., supra*, 40 Cal.4th at p. 888.)

The *Relkin* court determined that the condition was unconstitutionally vague, in part, in that "the portion of the condition requiring that defendant report 'any contacts with . . . any peace officer' " is vague because it "does indeed leave one to guess what sorts of events and interactions qualify as reportable." (*Relkin, supra*, 6 Cal.App.5th at p. 1197.) According to the *Relkin* court, the defendant could not be certain that the condition would not be triggered "when defendant says 'hello' to a police officer or attends an event at which police officers are present, but would be triggered if defendant were interviewed as a witness to a crime or if his 'lifestyle were such that he is present when criminal activity occurs,' " as the People had argued on appeal. (*Ibid.*) "The language does not delineate between such occurrences and thus casts an excessively broad net over what would otherwise be activity not worthy of reporting." (*Ibid.*)

In contrast to the condition at issue in *Relkin*, the law enforcement contact reporting condition that requires Pena to "[p]rovide true name, address, and date of birth if contacted by law enforcement," and to "[r]eport contact or arrest in writing to the P.O. within 7 days" by providing "the date of contact/arrest, charges, if any, and the name of the law enforcement agency" would appear to a reasonable, objective reader to refer to contacts initiated by a law enforcement officer in which the officer requests such identifying information from Pena. This would not include mere greetings by law enforcement officers or casual conversations with officers at public events or social gatherings. Further, the requirement that Pena report the "contact or arrest" and include the "name of the law enforcement agency" indicates that the interaction with a law enforcement officer must be of the type that either the law enforcement officer supplied that information to Pena, or Pena was made aware of this information because the nature of the "contact" was

25

sufficiently meaningful. This, too, indicates that a reasonable reading of the condition sufficiently delineates between casual, random interactions between Pena and law enforcement officers, including the exchanging of pleasantries, and situations in which Pena is a witness to a crime or is specifically stopped and questioned by a law enforcement officer. The mere fact that there " ' " 'may be difficulty in determining whether some marginal or hypothetical act is covered by [a condition's] language' " ' " does not render the condition "impermissibly vague." (*In re I.V.* (2017) 11 Cal.App.5th 249, 261.) We therefore reject Pena's vagueness challenge to condition 1(j).

These same factors also lead us to reject Pena's challenge to the condition on the ground that it is unconstitutionally overbroad on its face. Pena argues that none of the provisions of the condition "narrow the term 'contact' sufficiently to exclude contacts not worthy of reporting." He suggests that the requirement that he "[p]rovide [his] true name, address, and date of birth if contacted by law enforcement" "could refer to a situation where a police officer greeted Mr. Pena with a 'hello' or spoke to him at an event unrelated to the officer's law enforcement duties," because it "applies to any contact, as long as a law enforcement officer initiates the contact." This is not a reasonable reading of the condition. In no reasonable interpretation of the condition would one believe that Pena would be required to provide his name, address, and date of birth in response to a simple "hello" from a law enforcement officer who did not request this information of him. Further, given the second part of the condition, which requires that Pena report to his parole officer the date of the contact and that he also include the name of the law enforcement agency, the condition is most reasonably understood to require that Pena supply his correct information when he is contacted by a law enforcement officer and that officer requests this information from him,

26

and in turn, provides Pena with information as to who is making the request. This would obviously exclude exchanges of pleasantries with officers, whether encountered on the street or at an event. We therefore conclude that the reporting of law enforcement contacts condition is narrower than Pena suggests, and that the condition is not unconstitutionally overbroad.

>    5. *The condition prohibiting Pena from being in places where alcohol is the main item for sale*

Finally, Pena argues that the mandatory supervision condition prohibiting him from being in places where he knows that alcohol is the main item for sale is not reasonably related to his current offenses or his future criminality, and that it must therefore be stricken. Relying on *Lent* and *Ricardo P.*, Pena asserts that the significant burden that this condition imposes on his constitutional rights to travel and to associate is substantially disproportionate to the state interests served by the condition.

At trial, Pena objected to the imposition of this condition, arguing that, although he has admitted that he was using marijuana and methamphetamine during the period leading up to his arrest, he had not used alcohol in "a couple of years." His attorney stated, "So I don't think that that's a priority, and I'd like him to not be limited in the places that he can visit." The court rejected this argument, noting that "[t]here's a whole lot of drugs sold in bars, and he's had a drug problem in the past." The court also noted that "it's pretty well-established that alcohol and drugs both lower one's inhibitions and make[ ] one more likely to do things that he's vowed not to do again."

As mentioned above, a condition that forbids conduct that is not itself criminal, such as the condition at issue, is nevertheless valid if that conduct is reasonably related to the defendant's current convictions or future criminality. (*Lent*, *supra*, 15 Cal.3d at p. 486.) Although there is no

27

indication that alcohol use or being in a location where the main item for sale is alcohol are related to Pena's current offenses, it is nevertheless clear that " 'conditions of probation aimed at rehabilitating the offender need not be so strictly tied to the offender's precise crime' [citation] so long as they are 'reasonably directed at curbing [the defendant's] future criminality.' " (*Ricardo P.*, *supra,* 7 Cal.5th at p. 1122.)  However, *Lent*'s third prong "contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition" and "requires more than just an abstract or hypothetical relationship between the probation condition and preventing future criminality.  (*Ricardo P.*, at pp. 1119, 1121–1122 [burden imposed by electronics search condition on minor's privacy interests was "substantially disproportionate to the countervailing interests of furthering his rehabilitation and protecting society"].)

Pena argues that the burden that the alcohol condition imposes on his rights to travel and associate is substantially disproportionate to the condition's goal of deterring his drug use and preventing future criminality. However, a supervisee's constitutional rights to travel and to associate are not absolute and may be restricted if reasonably necessary to accomplish the essential needs of the state in rehabilitating criminal offenders and protecting the public.  (*Moran*, *supra*, 1 Cal.5th at p. 406; *Lopez*, *supra*, 66 Cal.App.4th at pp. 627–628; *Relkin*, *supra*, 6 Cal.App.5th at p. 1195.)  The record in this case demonstrates that Pena's personal and criminal histories support imposing a condition limiting his ability to be in places where alcohol is the main item for sale.  Specifically, Pena admitted to a long-standing and untreated drug problem.  Pena was 12 years old when he began using marijuana and methamphetamine, and he was 15 years old when he started

28

drinking alcohol. Pena claimed that "he was 'clean from 2014–2017' but he relapsed," and in the six months leading up to his arrest, Pena was using methamphetamine daily, including on the day he was arrested. He also acknowledged that the last time he used marijuana was "around the time of his arrest." Despite claiming to have been " 'clean' " between 2014 and 2017, Pena was convicted of driving under the influence of alcohol and possession of a controlled substance in 2015. Pena's criminal history and his current offenses involve theft offenses, which, when combined with Pena's admitted drug habit, suggest that he may have been committing theft offenses to support that daily drug habit.

Thus, unlike the record in *Ricardo P.*, the record in this case provides a link between Pena's criminal conduct and his use of drugs. (Compare *Ricardo P.*, *supra*, 7 Cal.5th at p. 1119 ["there is no suggestion in the record or by the Attorney General that Ricardo has ever used electronic devices to commit, plan, discuss, or even consider unlawful use or possession of drugs or any other criminal activity"].)

Further, the fact that Pena's most recent substance of choice appears to be methamphetamine does not mean that conditions intended to limit Pena's access to and use of alcohol are unwarranted. Courts have long recognized that there is an empirical nexus between drugs and alcohol. (*People v. Beal* (1997) 60 Cal.App.4th 84, 87 (*Beal*).) As explained in *Beal*, "It is well documented that the use of alcohol lessens self-control and thus may create a situation where the user has reduced ability to stay away from drugs. [Citations.] Presumably for this very reason, the vast majority of drug treatment programs . . . require abstinence from alcohol use." (*Ibid.*) Given this connection, the *Beal* court concluded that "alcohol use may lead to future criminality where the defendant has a history of substance abuse." (*Ibid.*; see

29

also *People v. Malago* (2017) 8 Cal.App.5th 1301, 1308 [upholding alcohol consumption, testing, treatment, and monitoring conditions as a proper exercise of discretion and reasonably related to prevent future criminality where defendant had a history of alcohol, marijuana, and cocaine use].)

More recently, in *People v. Cota* (2020) 45 Cal.App.5th 786, we upheld a probation condition restricting use or possession of alcohol where the defendant, who had pled guilty to carrying a concealed dirk or dagger, admitted that he was "a habitual user of methamphetamine and a daily user of marijuana." (*Id.* at pp. 788, 792.) Although alcohol was not involved in the incident, this court observed that "alcohol is a drug–albeit a legal one" and noted the empirical nexus between drugs and alcohol. (*Id.* at p. 792.) "It would make little sense to deprive [a defendant's] probation officer of the power to direct [a defendant] away from alcohol as a substitute mind-altering substance when his [or her] substance abuse history is so clearly demonstrated." (*Id.* at p. 793.) Given the defendant's history of drug use, we concluded that the imposition of alcohol-related probation conditions was reasonably related to preventing future crimes. (*Ibid.*) The court rejected an argument that the case was distinguishable from *Beal, supra,* 60 Cal.App.4th 84 because Cota was not charged with a drug-related offense. Rather, the court concluded the *Beal* analysis was applicable when considering whether an alcohol condition is reasonably related to future criminality. (*Cota*, at p. 793, fn. 7.)

We conclude that an alcohol-related condition such as the place limitation condition imposed in this case is reasonably related to preventing future criminality, given Pena's history of drug use, as well as evidenced in the record of his alcohol use, and his conviction for DUI in 2015. As the trial court noted, drugs are often sold in bars and, as we have already outlined,

there is a recognized connection between drug use and alcohol consumption, both of which can lower a person's inhibition and self-control. Further, the court imposed other alcohol-related conditions in addition to the place-related condition, including that Pena "not knowingly use or possess alcohol if directed by the P.O.," and that he "[s]ubmit to any chemical test of blood, breath or urine to determine blood alcohol content." Pena did not object to the imposition of these conditions. The condition prohibiting Pena from being in places where he knows alcohol is the main item for sale can assist in ensuring his compliance with the other alcohol-related conditions. We conclude that the condition prohibiting Pena from being in places where alcohol is the main item for sale is reasonably related to Pena's future criminality and is a proportional means of reducing his risk of recidivism and promoting his successful rehabilitation. We therefore reject Pena's challenge to condition 5(h).

IV.

DISPOSITION

The sentence is modified to strike the prison prior enhancement under section 667.5, subdivision (b) and to reduce the sentence by one year. The trial court is directed to amend the abstract of judgment to reflect the change in sentence and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


AARON, J.

WE CONCUR:


HALLER, Acting P. J.


GUERRERO, J.

32