Filed 12/22/16

CERTIFIED FOR PARTIAL PUBLICATION[*]


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C078628 |
| Plaintiff and Respondent, | (Super. Ct. Nos. CM040863, CM041966) |
| v. | |
| SCOTT LAWRENCE RELKIN, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Butte County, Michael R. Deems, Judge. Affirmed as modified and with directions.

Peter Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and John A. Bachman, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

Defendant Scott Lawrence Relkin appeals his sentence following entry of pleas in case Nos. CM040863 and CM041966. He contends the sentence exceeds the maximum to which he specifically agreed. He further contends the trial court erred by imposing certain conditions of mandatory supervision that are vague, overbroad, unconstitutional, and unrelated to rehabilitation. We will remand the matter to the trial court to modify probation condition No. 13. We will also modify the judgment to correct an unauthorized sentence on count 2 in case No. CM041966, and affirm the judgment as modified.

FACTUAL SUMMARY

A detailed recitation of the facts underlying defendant's convictions is not necessary for the resolution of this appeal. Thus, the facts are briefly summarized as follows.

*Case No. CM040863*

On January 30, 2014, narcotics task force agents executed a search warrant at defendant's apartment and discovered approximately 15 grams of methamphetamine, a digital scale, and drug paraphernalia, as well as messages on defendant's cell phone consistent with sales of narcotics.

*Case No. CM041966*

On November 2, 2014, narcotics task force agents conducted a traffic stop of a vehicle in which defendant was a passenger. At the time, defendant had been released from custody on his own recognizance and subject to search in yet another, a third pending case (case No. CM041821). A search of defendant's person revealed 11.6 grams of methamphetamine, 15 Hydromorphone pills, and a wallet containing $455. A baggie containing a small amount of methamphetamine was also found during a search of the vehicle.

PROCEDURAL BACKGROUND

*Case No. CM040863*

Defendant was charged by complaint, deemed the information, with possession for sale of a controlled substance (Health & Saf. Code, § 11378). The information alleged two prior convictions for possession of methamphetamine for sale (Health & Saf. Code, § 11370.2) and two prior prison terms (Pen. Code, § 667.5, subd. (b)).[1]

On June 12, 2014, defendant entered a negotiated plea of no contest to possession of methamphetamine for sale as charged and admitted a prior conviction for possession of methamphetamine for sale in exchange for dismissal of all remaining enhancements and special allegations and the prosecution's agreement not to file a pending unfiled felony case. Defendant waived time for sentencing.

On August 28, 2014, defendant was released on his own recognizance subject to warrantless search for items including controlled substances and drug paraphernalia.

*Case No. CM041966*

On October 6, 2014, defendant was charged by criminal complaint with possession of Hydromorphone (Health & Saf. Code, § 11350, subd. (a)—count 1),[2] possession of methamphetamine for sale (Health & Saf. Code, § 11378—count 2), and sale, offer to sell, or transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a)—count 3). The complaint alleged defendant had three prior convictions for possession for sale of methamphetamine (Health & Saf. Code, § 11370.2) and served two prior prison terms (§ 667.5, subd. (b)). The complaint further alleged that, as to all three counts, defendant was released on bail or his own recognizance in case

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     This count was later reduced to a misdemeanor pursuant to section 1170.18.

3

No. CM040863 (§ 12022.1). Defendant was again released on bail or his own recognizance.

On January 15, 2015, defendant entered a negotiated plea of no contest to all three counts, admitted three prior convictions for possession of methamphetamine for sale, two prior prison terms, and that he committed an offense while released on bail or his own recognizance in exchange for dismissal of his third case, No. CM041821, and a stipulated judgment for forfeiture of assets. The written plea agreement reflects a maximum possible sentence of 17 years in county prison.

*Sentencing in Case Nos. CM040863 and CM041966*

On February 19, 2015, the trial court sentenced defendant to an aggregate term of 17 years eight months in county prison as follows:

In case No. CM041966, the court sentenced defendant to the upper term of four years on count 3, plus a consecutive term of eight months (one-third the middle term) on count 2 stayed pursuant to section 654, a concurrent term of one year on count 1, nine years for the three prior convictions, two years for the prior prison terms, and two years for committing the offense while released on bail or his own recognizance.

In case No. CM040863, the court sentenced defendant to a consecutive term of eight months (one-third the middle term) and stayed the remaining enhancement pursuant to section 654.

The court ordered defendant to serve the first 3,650 days of his sentence in the county jail and the remaining 2,798 days on mandatory supervision (§ 1170, subd. (h)(5)(B)) subject to general and special conditions as set forth on pages 19 through 21 of the probation report. Defendant made no objection. The court also imposed fees and fines and awarded defendant presentence custody credit.

Defendant filed a timely notice of appeal. The trial court denied his request for a certificate of probable cause.

DISCUSSION

I

*Enforcement of Plea Agreement*

Defendant contends the trial court's sentence of 17 years eight months denied him the right to specific enforcement of his plea bargain for a sentence of 17 years. He claims the judgment should be reversed and remanded with directions that the trial court amend the abstract of judgment to reflect a sentence of 17 years. He further contends the claim is neither waived nor forfeited because the court failed to admonish him pursuant to section 1192.5.**3** Assuming defendant's claim has not been forfeited, it fails on the merits.

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.] 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs. [Citation.]' " (*People v. Shelton* (2006) 37 Cal.4th 759, 767.) "[C]ourts should look first to the specific language of the agreement to ascertain the expressed intent of the parties. [Citations.] Beyond that, the courts should seek to carry out the parties' reasonable expectations. [Citations.]" (*People v. Nguyen* (1993) 13 Cal.App.4th 114, 120, fn. omitted.)

"The Supreme Court has . . . recognized that due process applies not only to the procedure of accepting the plea [citation], but that the requirements of due process attach also to implementation of the bargain itself. It necessarily follows that violation of the

---

**3** Section 1192.5 provides, in relevant part, that "[i]f the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in that case, the defendant shall be permitted to withdraw his or her plea if he or she desires to do so."

[plea] bargain by an officer of the state raises a constitutional right to some remedy. [Citations.]" (*People v. Mancheno* (1982) 32 Cal.3d 855, 860, citing *Santobello v. New York* (1971) 404 U.S. 257, 262 [30 L.Ed.2d 427, 433].)

Defendant's claim is based on the flawed premise that the plea agreement reached on January 15, 2015, and, specifically, the agreed-upon sentencing lid of 17 years, applied to both case No. CM040863 and case No. CM041966. The record reveals otherwise.

Defendant entered a negotiated plea agreement in case No. CM040863 on June 12, 2014, whereby he pleaded no contest to a charge of possession of methamphetamine for sale and admitted a prior conviction in exchange for dismissal of all remaining enhancements and special allegations, a sentence of no more than three years, and the prosecution's agreement not to file a pending unfiled felony case. The written plea agreement consistently specifies a maximum possible sentence.

Thereafter, on January 15, 2015, defendant entered a separate negotiated plea agreement in case No. CM041966, whereby he pleaded no contest to three new charges and admitted three prior convictions, two prior prison terms, and an allegation that he committed an offense while released on bail or his own recognizance. The written plea agreement, which reflects only case No. CM041966, indicates a maximum possible sentence of 17 years in county prison. The agreement makes no mention of case No. CM040863 except in paragraph 3(a) in reference to defendant's admission of his prior conviction in that case.

Defendant claims he had a reasonable understanding that he would not receive a consecutive sentence in case No. CM040863. Again, the record belies the claim. At the January 15, 2015, plea hearing, defense counsel informed the trial court that defendant "is going to be pleading, basically, as charged in CM041966" in exchange for dismissal of this third case, No. CM041821, and a stipulated asset forfeiture. When the court asked defendant whether any promises had been made "other than what's been talked about

6

here in court to get you to enter a plea," defendant replied, "No, sir." After defendant entered his plea and waived time for sentencing in case No. CM041966, the court stated to Anna Kuhn, the probation officer present at the plea hearing, "Also, I believe, Ms. Kuhn, on the other matters, CM040863, that was already on for sentencing, and I believe we already had a probation report on that matter, I think we should refer that one back to Probation as well to consider that case in preparing a probation report on both matters together." Moreover, the probation report recommended a term of 17 years in case No. CM041966 and a consecutive eight-month term in case No. CM040863, for an aggregate term of 17 years eight months. At the sentencing hearing on February 19, 2015, the court stated its intention to "follow the recommendation of Probation," and asked to hear from the parties. Defense counsel stated, "We agree with the split sentence. No further comments." Thereafter, the court noted each of the pleas entered by defendant in case Nos. CM041966 and CM040863, found a factual basis "for the *pleas*," and imposed a sentence in case No. CM040863 to run consecutive to the sentence imposed in case No. CM041966 for an aggregate term of 17 years eight months in county prison. Again, defendant neither objected to nor took issue with the sentence imposed.

Finally, in concluding defendant's claim that the People and the court promised him a maximum aggregate sentence of 17 years lacks merit, we reject his claim that the People are estopped from arguing any greater term.

The record makes plain that defendant bargained for and agreed to a sentencing lid of 17 years in case No. CM041966 and a sentencing lid of three years in case No. CM040863, and that he understood and agreed to the aggregate sentence of 17 years eight months that he received. Because defendant received the benefit of his bargained-for plea, we conclude there was no violation of defendant's plea agreements.

II

*Conditions of Mandatory Supervision*

Defendant contends the trial court erred in imposing mandatory supervision condition Nos. 6 and 13 because those conditions are not related to rehabilitation, and are vague and overbroad, and unconstitutional.  He contends his claim raises issues of constitutionality and presents a pure question of law turning on undisputed facts and was therefore not forfeited for failure to object.

Section 1170, subdivision (h)(5)(B)(i), provides that a defendant ordered to mandatory supervision " 'shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation.' " (*People v. Fandinola* (2013) 221 Cal.App.4th 1415, 1422.) "[T]he Legislature has decided a county jail commitment followed by mandatory supervision imposed under section 1170, subdivision (h), is akin to a state prison commitment; it is not a grant of probation or a conditional sentence." (*Ibid*.)  We "analyze the validity of the terms of supervised release under standards analogous to the conditions or parallel to those applied to terms of parole." (*People v. Martinez* (2014) 226 Cal.App.4th 759, 763 (*Martinez*).)

"The validity and reasonableness of parole conditions is analyzed under the same standard as that developed for probation conditions.  [Citations.]  'A condition of [parole] will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.]  Conversely, a condition of [parole] which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality.' (*People v. Lent* (1975) 15 Cal.3d 481, 486, fn. omitted, superseded on another ground by Prop. 8 as stated in *People v. Wheeler*

(1992) 4 Cal.4th 284, 290–292; *see People v. Olguin* (2008) 45 Cal.4th 375, 379–380.)"
(*Martinez, supra*, 226 Cal.App.4th at p. 764.)

"In general, the courts are given broad discretion in fashioning terms of supervised release, in order to foster the reformation and rehabilitation of the offender, while protecting public safety.  [Citations.]  Thus, the imposition of a particular condition of probation is subject to review for abuse of that discretion.  'As with any exercise of discretion, the court violates this standard when it imposes a condition of probation that is arbitrary, capricious or exceeds the bounds of reason under the circumstances. [Citation.]'  [Citation.]" (*Martinez, supra*, 226 Cal.App.4th at p. 764.)

"A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness.  [Citation.]  A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad.  [Citation.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).)

In general, the failure to make a timely objection to a probation condition forfeits the claim of error on appeal.  (*People v. Welch* (1993) 5 Cal.4th 228, 234; *People v. Hodges* (1999) 70 Cal.App.4th 1348, 1357; *Sheena K., supra*, 40 Cal.4th at p. 882.)  "A timely objection allows the court to modify or delete an allegedly unreasonable condition or to explain why it is necessary in the particular case.  The parties must, of course, be given a reasonable opportunity to present any relevant argument and evidence." (*People v. Welch, supra*, 5 Cal.4th at p. 235.)  An objection may be raised for the first time on appeal only where it concerns an unauthorized sentence involving pure questions of law. (*People v. Scott* (1994) 9 Cal.4th 331, 354; *Sheena K., supra*, 40 Cal.4th at pp. 888-889.)

Defendant argues his failure to object to the imposition of either of the challenged conditions does not forfeit his claim because both conditions present a pure question of

law turning on undisputed facts. We consider each condition and, as we shall explain, conclude that the first (condition No. 6) is valid and the second (condition No. 13) is valid in part.

*Condition No. 6*

General condition No. 6 requires defendant to obtain "written permission from the probation officer" before leaving the State of California. While all citizens enjoy a federal constitutional right to travel from state to state (*Shapiro v. Thompson* (1969) 394 U.S. 618, 629 [22 L.Ed.2d 600, 612]), that right is not absolute and may be reasonably restricted in the public interest. (*In re White* (1979) 97 Cal.App.3d 141, 149-150 (*White*).) Defendant was convicted of crimes involving the sale and transportation of controlled substances. There is a direct relationship between the sale and transport of drugs and the exercise of the right to travel. Thus, under *Lent,* the condition is reasonably related to preventing future criminality by placing a reasonable limitation on defendant's unfettered ability to travel from California to another state.

Analogizing to the facts in *White,* defendant claims condition No. 6 violated his state and federal constitutional right to travel and thus his right to work. *White* is factually distinguishable. There, the reviewing court struck down a probation condition *prohibiting* the defendant from entering certain areas in Fresno known for having a high concentration of prostitution arrests. (*White, supra*, 97 Cal.App.3d at pp. 143-144, 148.) But here, unlike *White,* the condition's limitation on interstate travel is closely tailored to the purpose of monitoring defendant's travel to and from California not by barring his ability to travel altogether but by requiring that he first obtain written permission before doing so. Indeed, the court in *White* concluded that the condition in question there could be modified by, for example, "establish[ing] reasonable hours during the day or night when the [defendant] may under certain specified circumstances and for a particularly enumerated purposes [*sic*]" enter into the prohibited areas. (*Id.* at pp. 151-152.) In other words, the condition would pass constitutional muster if it were modified to specify

10

certain times and reasons the defendant would be permitted to enter while continuing to prohibit other times and reasons.  Such is the case here.

Defendant argues conditioning the right to leave the state on obtaining prior written approval does not render the condition legal.  As support, he relies on *People v. Bauer* (1989) 211 Cal.App.3d 937.  There, the Court of Appeal rejected a probation condition requiring the defendant to obtain his probation officer's approval of his residence, finding the condition was not reasonably related to future criminality and did not relate to conduct that was in itself criminal.  The court also noted, without further explanation, that the condition was "extremely broad" and not narrowly tailored to minimize interference with defendant's constitutional right to travel and freedom of association.  (*Id.* at p. 944.)  In particular, the court noted the defendant lived with and had an "exemplary" relationship with his parents, and the condition "gives the probation officer the discretionary power . . . to forbid [him] from living with or near his parents -- that is, the power to banish him."  (*Ibid.*)

The condition in the *Bauer* case differs significantly from the condition challenged here.  In *Bauer*, the condition, which had nothing to do with the assault and false imprisonment crimes of which the defendant was convicted, required the defendant to obtain approval of his residence.  By its very broad nature, the condition thus gave the probation officer the unfettered power and discretion to determine where and with whom the defendant would live and, as the *Bauer* court noted, had the potential to greatly restrict and control the defendant's ability to travel and freely associate with others of his choosing.  Here, on the other hand, the travel condition is narrowly tailored to require only that defendant obtain written permission to leave the state.  It does not prohibit travel within the state nor does it prohibit him from travel altogether.  As such, it is " 'sufficiently precise for [defendant] to know what is required of him, and for the court to determine whether the condition has been violated.' "  (*Sheena K., supra*, 40 Cal.4th at

11

p. 890.)  The condition is also reasonably related to future criminality in light of defendant's conviction for sale and transportation of drugs.  Thus, it passes the *Lent* test.

*Condition No. 13*

General condition No. 13 requires defendant to "report to the probation officer, no later than the next working day, any arrests or any contacts with or incidents involving any peace officer."  Defendant claims the terms "contacts with" and "incidents involving" peace officers are uncertain because one cannot determine whether those terms include occasional conversation with a police officer who lives down the street, answering an officer's questions as a witness to a crime, or participation in a demonstration where officers are present.  He further claims the condition is vague because it is subject to the " 'whim of any police or probation officer,' " and unconstitutionally infringes on his rights under the First Amendment of the United States Constitution.  We agree the condition is vague, in part.

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.'  [Citation.]  The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are 'embodied in the due process clauses of the federal and California Constitutions.  [Citation.]'  [Citation.]  The vagueness doctrine bars enforcement of ' "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." [Citation.]'  [Citation.]"  (*Sheena K., supra*, 40 Cal.4th at p. 890.)

On the one hand, a probationer can hardly argue with a straight face that reporting "any arrests" requires one to guess at its meaning.  Similarly, the phrase "incidents involving any peace officer" implies the happening of some difficulty or problem, either directly or indirectly related to defendant, that has resulted in police involvement.  This, too, is sufficient to put defendant on notice as to what is required of him.

12

On the other hand, the portion of the condition requiring that defendant report "any contacts with . . . any peace officer" is vague and overbroad and does indeed leave one to guess what sorts of events and interactions qualify as reportable. We disagree with the People's argument that the condition is clearly not triggered when defendant says "hello" to a police officer or attends an event at which police officers are present, but would be triggered if defendant were interviewed as a witness to a crime or if his "lifestyle were such that he is present when criminal activity occurs." The language does not delineate between such occurrences and thus casts an excessively broad net over what would otherwise be activity not worthy of reporting. Accordingly, we remand the matter to the trial court with directions to modify condition No. 13 to address the concerns expressed in this opinion."

Finally, although not raised by the parties, we note that a portion of the sentence imposed in case No. CM041966—the consecutive term of eight months (one-third the middle term) on count 2 stayed pursuant to section 654—is unauthorized. "The one-third-the-midterm rule of section 1170.1, subdivision (a), only applies to a consecutive sentence, not to a sentence stayed under section 654." (*People v. Cantrell* (2009) 175 Cal.App.4th 1161, 1164.) To effectuate section 654, the trial court must impose a full term and stay execution of that term. (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1469-1472.) We exercise our inherent authority to correct an unauthorized sentence (*People v. Smith* (2001) 24 Cal.4th 849, 852; *People v. Turner* (2002) 96 Cal.App.4th 1409, 1413-1415) by modifying the judgment to impose a sentence on count 2 in case No. CM041966 of a consecutive two-year term (the middle term) stayed pursuant to section 654. We direct the trial court to amend the abstract of judgment accordingly.

### DISPOSITION

Defendant's convictions are affirmed. We remand the matter to the trial court to modify probation condition No. 13 to address the concerns expressed in this opinion. We also modify the judgment to impose a sentence on count 2 in case No. CM041966 of a

13

consecutive two-year term (the middle term) stayed pursuant to section 654.  The trial court is directed to prepare an amended abstract of judgment to reflect the corrected sentence, and send a copy of the amended abstract to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.


                                                    NICHOLSON          , Acting P. J.



We concur:



        MAURO          , J.



        MURRAY         , J.



14