Filed 10/22/21  P. v. Stewart CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076727 |
| v. | (Super.Ct.No. FSB21000044) |
| PHILLIP BLAINE STEWART, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  J. David Mazurek, Judge. Affirmed.

Lynelle K. Hee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

1

Phillip Blaine Stewart pled no contest to possessing a "zip gun." In exchange for his plea, the trial judge sentenced him to two years' probation. One condition of his probation required Stewart to obtain written permission from his probation officer before leaving the state. Stewart argues the condition is unconstitutionally overbroad. We disagree and affirm.

## I. FACTS

In December 2020 police responded to reports of a suspicious vehicle parked on private property.[1] Police found Stewart in the driver's seat and Benjamin Martin in the passenger seat. When police arrived, Stewart attempted to leave the vehicle, but the police made him stay nearby. The car wouldn't start because it was out of gas. The police asked Martin whom the vehicle belonged to, and Martin nodded at Stewart. But when the police asked Martin what Stewart would say if asked the same question, Martin said "he would not know what to do."

Suspecting the vehicle was stolen, the police detained Martin. Martin told the detaining officer he had " 'steel' " on him, which the detaining officer understood to mean Martin was armed. The officer searched Martin and found two 12-gauge shotgun shells in his pocket along with a cylinder containing what looked like a firing pin. Another officer detained Stewart at the same time. After searching the vehicle, the officers found "a seven and-a-half inch steel barrel that had a live shotgun round on one end under the driver's seat of the vehicle."

---

[1] The facts are taken from the police report, which Stewart stipulated formed the factual basis for his guilty plea.

2

In March 2021, Stewart pled no contest to possessing a zip gun. (Pen. Code, § 33600, unlabeled statutory citations refer to this code.) The sentencing judge placed Stewart on two years' formal probation with certain terms and conditions. Stewart objected that a term requiring him to "[n]ot leave the state of California without first obtaining written permission of the Probation Officer" was vague and overbroad. The sentencing judge responded he was "gonna order that one 'cause [Stewart] can't be supervised without—if he leaves the state."

Stewart filed a timely notice of appeal.

## II. ANALYSIS

Stewart argues the challenged probation condition is unconstitutionally overbroad because it restricts his constitutional rights to travel and free association and is not narrowly tailored to guarantee his supervision, reform, and rehabilitation.

Generally, we review a trial court's imposition of probation conditions for abuse of discretion. (*People v. Olguin* (2008) 45 Cal.4th 375, 379.) But where, as here, a defendant challenges a probation condition on constitutional grounds, we review its constitutionality de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143; see *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1096-1097 [recognizing the constitutional right to travel]; *People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1356 [recognizing the constitutional right to association].)

" '[T]he overbreadth doctrine requires that conditions of probation that impinge on constitutional rights must be tailored carefully and reasonably related to the compelling

state interest in reformation and rehabilitation.' " (*People v. Quiroz* (2011) 199 Cal.App.4th 1123, 1128.) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.) "Probation conditions restricting a probationer's exercise of his constitutional rights are upheld only if narrowly drawn to serve the important interests of public safety and rehabilitation, and if they are 'specifically tailored to the individual probationer.' " (*People v. Smith* (2007) 152 Cal.App.4th 1245, 1250, italics omitted (*Smith*).) "If available alternative means exist which are less violative of the constitutional right and are narrowly drawn so as to correlate more closely with the purposes contemplated, those alternatives should be used." (*In re White* (1979) 97 Cal.App.3d 141, 150 (*White*).)

Here, the state has a compelling interest in "continuing supervision by the probation department and the need to make sure the defendant meets the standards of the Uniform Act for Out-of-State Probationer and Parolee Supervisions before he is allowed to go to another state [citation]. Also it minimizes extradition problems." (*People v. Thrash* (1978) 80 Cal.App.3d 898, 902.) Indeed, section 1203, subdivision (i), states "[a] probationer shall not be released to enter another state unless the case has been referred to the Administrator of the Interstate Probation and Parole Compacts, pursuant to the Uniform Act for Out-of-State Probationer or Parolee Supervision."

4

Therefore, the state's interest here is not merely to be notified of a probationer's interstate comings and goings. It and its agents are under a statutory obligation "not to release" a probationer into another state without taking certain actions first. This requires that the state, and its agent in the probation officer, be capable of pre-approving and potentially prohibiting Stewart's interstate movement.

The state also has a compelling interest in restricting Stewart's travel in particular because of his history of probation violations. Indeed, in 2014 Stewart was convicted of and placed on probation for the same offense, possession of a zip gun. This suggests two reasons for an increased government interest in controlling Stewart's movement. First, because previous rehabilitation was ineffective, and stricter standards are required to ensure rehabilitation works this time. Second, because Stewart has a history of violating conditions, and needs to be more heavily monitored to avoid further violations.

Accordingly, the condition's requirement that Stewart seek written permission before leaving the state is narrowly tailored to meet the government's compelling interest.

Stewart's argument that less restrictive alternatives exist is unavailing. He argues the state's interest could be met through a simple notice requirement, and that preapproval is overly restrictive. But a simple notice requirement would not allow the state to prevent Stewart's travel into another state, as is implicitly required by section 1203, subdivision (i). Nor would it be enough to maintain sufficient contact with him to ensure his compliance and rehabilitation, since it would potentially allow Stewart

to leave the state without allowing probation to first make the necessary preparations to keep in contact with him.

Stewart also argues there must be a direct relationship between the crime and the restriction on travel, and that no such connection exists here. (See, e.g. *Smith*, *supra*, 152 Cal.App.4th at pp. 1250-1252 [concluding out-of-county travel restriction for registered sex offender was "constitutionally infirm" in part because "the prohibition bears no reasonable relation to the crime"]; *White*, *supra*, 97 Cal.App.3d at pp. 149-150 [finding condition banning defendant from entering certain areas unconstitutional because "there is no direct relationship between the commission of soliciting for prostitution and the exercise of the right to travel"]; *People v. Relkin* (2016) 6 Cal.App.5th 1188, 1195 (*Relkin*) [upholding imposing similar interstate travel restriction as at issue here in part because the defendant was convicted for selling drugs and "[t]here is a direct relationship between the sale and transport of drugs and the exercise of the right to travel"].)

However, the cases Stewart relies on for this proposition are factually distinguishable. Both *White* and *Smith* concerned categorical bans on travel. Indeed, this, not the condition's relationship to the crime, was also dispositive in *Relkin*. The court in *Relkin* said it best: "here, unlike *White*, the condition's limitation on interstate travel is closely tailored to the purpose of monitoring defendant's travel to and from California not by barring his ability to travel altogether but by requiring that he first obtain written permission before doing so. Indeed, the court in *White* concluded that the condition in question there could be modified by, for example, 'establish[ing] reasonable hours during

the day or night when the [defendant] may under certain specified circumstances and for a particularly enumerated purposes [*sic*]' enter into the prohibited areas. [Citation.] In other words, the condition would pass constitutional muster if it were modified to specify certain times and reasons the defendant would be permitted to enter while continuing to prohibit other times and reasons. Such is the case here." (*Relkin*, *supra*, 6 Cal.App.5th at pp. 1195-1196.) Though *Relkin* also considered the connection between the condition and the crime, this connection merely informed its narrow tailoring analysis and was not a necessary precondition for the condition's constitutionality.

Accordingly, we conclude the probation condition is not overbroad because the state's interest in compelling compliance with the administrative process when a probationer is out of state is critical, and preapproval is a narrowly tailored means of achieving that end in this case.

### III.  DISPOSITION

We affirm.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH            

J.

We concur:

McKINSTER        

      Acting P. J.

MENETREZ        

      J.