Filed 11/18/21  In re J.T. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re J.T., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. J.T., Defendant and Appellant. | A160626 (Solano County Super. Ct. No. J44953) |

Defendant J.T. challenges several probation conditions imposed by the juvenile court at his reentry and disposition hearing following his release from commitment to the Department of Juvenile Justice (DJJ).  Specifically, J.T. challenges a curfew condition, several aspects of a gang-related condition, and a police-contact condition as unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*)[1] and as unconstitutional.

We conclude both the gang-activity condition, and the police-contact condition are currently infirm and remand the case to the juvenile court for removal or refinement of these conditions.  We otherwise affirm.

---

[1]  Superseded on another ground by Proposition 8 as stated in *People v. Moran* (2016) 1 Cal.5th 398, 403, footnote 6.

1

On a July 2014 morning, J.T., then 14 years old, and another juvenile confronted a mother and her son in Richmond. J.T. yelled at the boy, " 'Empty out your pockets!' " and then started to "punch [him] in the chest numerous times" before reaching into his pockets and removing $40. The boy fell to the ground, and J.T. "kick[ed] him two more times in the ribs and nose." As J.T. was confronting the boy, his cohort "punch[ed the mother] about four times in the stomach and kick[ed] her two more times in her thighs" before grabbing her cellphone. Minor and his friend then fled the scene. Months later, the two victims identified J.T. as one of the assailants, and he was detained.

The Contra Costa County District Attorney filed a Welfare and Institutions Code section 602 petition alleging two counts of second degree robbery along with two criminal street gang enhancements (Pen. Code, §§ 211, 212.5, subd. (c), 186.22, subd. (b)(1)).[2] During an interview with probation, J.T. initially stated he "associates with gang members" and in a subsequent interview, admitted to being a Sureño gang member. He pleaded no contest to one count of second degree robbery, and the juvenile court sustained the petition as to that count.[3] J.T. was adjudged a ward of the court and committed to Orin Allen Youth Rehabilitation Facility (Orin Allen) for a period not to exceed nine months.

Two months after his release from Orin Allen, J.T. violated his probation. Around midnight on an October 2015 night, J.T. was found in

---

[2] All further references are to the Penal Code unless otherwise indicated.

[3] The juvenile court granted the district attorney's motion to dismiss the second count of second degree robbery and the two gang enhancements.

2

possession of a "five inch knife with a brass knuckles handles," and it was alleged he was "breaking . . . street lamps at the park." He admitted to associating with Sureño gang members, including at the time of his arrest. Probation recommended another 60-day term at Orin Allen. All parties agreed to dismiss the probation violation, and that no new petition would be filed. The court continued J.T. as a ward of the court, committed him to Orin Allen for 60 days, and modified his probation terms upon release to include a "no assoc[iation] w[ith] anyone known to be a gang member" term. (Capitalization omitted.)

A few days before the disposition hearing for the October violation, J.T. again violated his probation by "being involved in a physical altercation with another ward," who was a Norteño gang member. J.T. also admitted this violation, and the court added another 30 days at Orin Allen to his commitment time.

Two months after his release from Orin Allen, J.T. again violated probation.[4] Around 2:00 a.m. on an April 2016 morning, a Contra Costa Sheriff's deputy stopped a vehicle that had been reported stolen. J.T. was driving the car, and in a subsequent interview, admitted "he knew the vehicle was a 'hot boy car' (street terminology for stolen vehicle)." (Capitalization omitted.) One of the passengers in the car associated with Sureño gang members. The district attorney filed a supplemental wardship petition alleging one count of unlawfully driving or taking a vehicle (Veh. Code, § 10851, subd. (a)). J.T. pleaded no contest, and the court sustained the petition, and committed J.T. to the Youth Offender Treatment Program (the

---

[4] J.T. violated two probation terms—that he (1) Obey all laws; and (2) "Be at legal residence between the hours of 7:00PM and 6:00AM unless accompanied by a parent/guardian."

3

Program) for a maximum time of four years 165 days or until J.T. turned 21 years of age.

Two days before the stolen car incident, J.T. and two other friends had been involved in an attempted shooting. The three minors arrived at the home of the victim's mother, attempting to fight the victim's brother. Realizing they were outnumbered by the victim's family members, the minors fled after first threatening to return and " 'pop' " the brother. The brother stated the three were Sureño gang members because they yelled " 'Sur trece' and 'WSL' " at him before leaving. Later that day, the victim and her three children left her mother's home. While the victim was driving, another car accelerated around her and then stopped in front of her, in an attempt to block her in. A suspect leaned out of the car and attempted to fire a gun towards the victim's car, but the gun jammed. The police later found J.T. in the vehicle described by the victim.

In an interview with police, J.T. initially denied having a firearm but later admitted he was the attempted shooter. He stated he thought the person they "had [a] funk with was in the car." J.T. stated when he tried to shoot, he realized the safety was on. "At no time," did J.T. "express[] remorse for [his] actions," rather he "described his mistake as being 'trigger happy' " and maintained they " 'only shot the gun one time' " and that no one had been hurt. J.T. also admitted his family members were members of the VFL Southerners gang and he was a member of the West Side Loco gang—both off-shoots of the Sureños.

The district attorney filed an amended second supplemental wardship petition[5] alleging one count of felony assault with a semiautomatic weapon

---

[5] Originally, the district attorney filed a criminal complaint alleging one count of felony assault with a semiautomatic weapon, and one count of

4

(§ 245, subd. (b)) and one count of felony assault with a firearm (§ 245, subd. (a)(2)), with special allegations of street terrorism and personal use of a firearm (§§ 186.22, subd. (b)(1)(B), 12022.5, subd. (a)) as to both counts. J.T. later pleaded no contest to the felony assault with a firearm count and admitted the gang enhancement allegation as to count 1.[6] The court committed him to the DJJ for a maximum term of 10 years eight months or until the age of 23 with credit for time served of three years 78 days.

Two years later, the probation department recommended DJJ jurisdiction be terminated and probation be reinstated. J.T. was regarded as " 'one of the model youths,' " and as a result of "his completion of treatment requirements, his overall reduction of risk to reoffend and improved strengths and behavior," the parole board granted J.T.'s discharge. After a reentry hearing, DJJ's jurisdiction was terminated, and the juvenile court continued J.T. as a ward of the court, transferred his wardship to Solano County, and placed him on probation, subject to various terms and conditions.

## DISCUSSION

"[W]e ' "review conditions of probation for abuse of discretion." ' [Citation.] Specifically, we review a probation condition 'for an indication that the condition is "arbitrary or capricious" or otherwise exceeds the bounds of reason under the circumstances.' " (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118 (*Ricardo P.*).)

---

felony assault with a firearm, with special allegations of street terrorism and personal use of a firearm. Next, the district attorney moved to transfer J.T.'s case to adult court, as he was 17 years old at the time. Later, the criminal matter was suspended due to "Proposition 57 and remanded back to juvenile court."

[6] The remaining count and enhancements were dismissed.

5

The trial court may impose "reasonable conditions, as it may determine are fitting and proper . . . generally and specifically for the reformation and rehabilitation of the probationers." (§ 1203.1, subd. (j).) Under *Lent*, a condition of probation is unreasonable if it: " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent, supra*, 15 Cal.3d at p. 486.) "*Lent*'s third prong requires more than just an abstract or hypothetical relationship between the probation condition and preventing future criminality" and instead "contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Ricardo P., supra*, 7 Cal.5th at pp. 1121-1122.) And as the Supreme Court has acknowledged, "courts may properly base probation conditions upon information in a probation report that raises concerns about future criminality unrelated to a prior offense." (*Id.* at p. 1122.)

"When a probation condition imposes limitations on a person's constitutional rights, it ' "must closely tailor those limitations to the purpose of the condition" '—that is, the probationer's reformation and rehabilitation— ' "to avoid being invalidated as unconstitutionally overbroad." ' [Citations.] 'The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the [probationer]'s constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement.' [Citation.] ' " 'Even conditions which infringe on constitutional rights may not be invalid [as long as they are] tailored specifically to meet the needs of the juvenile.' " ' " (*In re P.O.* (2016) 246 Cal.App.4th 288, 297.) A constitutional challenge to a probation

6

condition raises an issue of law, which we review de novo.  (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

### *Curfew Condition*

Before the reentry and disposition hearing, the probation department recommended a curfew condition (condition No. 8) as one of the conditions of supervision upon release from the DJJ.  At the hearing, defense counsel objected to the condition as invalid under *Lent*.

The juvenile court, addressing counsel's objection, stated, "I do think a curfew is important and I am going to impose one.  [J.T.] is leaving a very structured program and I believe that this will assist him in his re-entry."  The juvenile court then imposed the following condition:  "curfew of 10 p.m. to 6 a.m. unless approved by the Deputy Probation Officer."  The condition was to be reviewed by probation after 45 days, and J.T.'s curfew could be "extended for necessary school, work, or family functions if accompanied by a parent or responsible adult, but may not be extended for Wards past 10:00 p.m. unless the minor is accompanied by a parent, legal guardian or other adult having legal care and or custody of the minor pursuant to section 729.2(c) W&I."

On appeal, J.T. renews his *Lent* challenge to the condition.  He concedes the condition meets the first and second prongs of *Lent*, but maintains it fails the third because it "forbids conduct which is not reasonably related to future criminality."  (*Lent, supra*, 15 Cal.3d at p. 486.)

J.T. first asserts that "since being out at night is not in any way connected to [his] criminal conduct or personal history, there is no reason to believe that the imposition of a curfew would prevent [him] from engaging in any future criminal acts."  Second, relying on *Ricardo P., supra*, 7 Cal.5th 1113, he maintains the condition imposes a burden on his right to travel that

7

is "substantially disproportionate to the countervailing interest of furthering his rehabilitation and protecting society." (*Ricardo P., supra*, 7 Cal.5th at p. 1119.)

In *Ricardo P.*, after placing the minor on probation, the juvenile court imposed a warrantless electronic search condition "solely to enable probation officers to monitor whether Ricardo is in communication about drugs or with people associated with drugs." (*Ricardo P., supra*, 7 Cal.5th at p. 1119.) The Supreme Court granted review on the issue of whether the electronic search condition was reasonably related to future criminality as is required under *Lent*. (*Id.* at pp. 1118–1119.) In holding it was not, the court observed the record, which contained "no indication that Ricardo had used or will use electronic devices in connection with drugs or any illegal activity," was "insufficient to justify the substantial burdens imposed" by the search condition. (*Id.* at p. 1116.)

In contrast to the electronic search condition at issue in *Ricardo P.*, a curfew condition is statutorily required in a juvenile case. Welfare and Institutions Code section 729.2 provides, in pertinent part, "If a minor is found to be a person described in Section 601 or 602 and the court does not remove the minor from the physical custody of the parent or guardian, the court as a condition of probation, except in any case in which the court makes a finding and states on the record its reasons that that condition would be inappropriate, shall: [¶] . . . [¶] Require the minor to be at his or her legal residence between the hours of 10:00 p.m. and 6:00 a.m. unless the minor is accompanied by his or her parent or parents, legal guardian or other adult person having legal care or custody of the minor." (Welf. & Inst. Code, § 729.2, subd. (c).)

8

J.T. acknowledges that Welfare and Institutions Code section 729.2 requires a curfew condition and that the courts have "upheld probation conditions that infringe on a *minor'*s right to travel at night." But he maintains those cases "are not applicable here because [he] is a 20-year-old adult."

J.T.'s argument is based on a faulty premise—that he is an *adult* probationer. He is not. J.T. remains under the jurisdiction of the juvenile court. He was under the age of 18 when he committed his offenses (Welf. & Inst. Code, § 602, subd. (a); *Rucker v. Superior Court* (1977) 75 Cal.App.3d 197, 200), and the juvenile court may retain jurisdiction over him until the age of 25. (§ 607, subd. (b); *In re Maria A.* (1975) 52 Cal.App.3d 901, 903-904.) Therefore, despite having reached the age of majority, J.T. is nonetheless a *juvenile* probationer. (See *In re Victor L.* (2010) 182 Cal.App.4th 902, 927-928 (*Victor L.*) [no-tattoo condition did not unduly impair defendant's First Amendment rights even though he was 18, so long as he remained under the juvenile court's jurisdiction].)

J.T. also asserts the application of Welfare and Institutions Code section 729.2 "would actually result in a more restrictive curfew" because under that section a ward is allowed to go out past curfew if " 'accompanied by his or her parent or parents, legal guardian, or other adult person' " but here as an "adult . . . he does not have a legal guardian and may not even be living with his parent(s) throughout the duration of his probation." This is speculative and not, in any event, the case at present. J.T. was released to his mother's home and cannot move without probation department approval. Accordingly, under the terms of Welfare and Institutions Code section 729.2, J.T. is still allowed out of the house past 10 p.m. when accompanied by his parents, and the condition is no less restrictive for wards under the age of 18.

9

In any case, regardless of the application of Welfare and Institutions Code section 729.2, the probation condition is reasonable. The trial court stated it was imposing the curfew condition to facilitate J.T.'s rehabilitation and reentry. J.T. had a long and escalating criminal history, beginning when he was 14 years old. He had only recently turned a corner. Initially, when he arrived at DJJ he struggled, he received nine behavior reports in five months "for engaging in . . . gang related physical altercations, participating in group disturbances, gang activity resulting in Use of Force, disruptive behavior and an assault of a staff member." But in his last year at DJJ, he was transferred to a new hall and began making positive changes, including "disassociating himself from other gang-affiliated youth." On this record, the trial court could reasonably conclude a curfew would help bridge the gap between the structured program J.T. was leaving, and his status on probation. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 889 [juvenile court "has wide discretion to select appropriate [probation] conditions and may impose ' "any reasonable condition that is 'fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced' " ' "].)

J.T. additionally maintains the curfew condition "could easily be counter-productive to his reentry" because it could "interfere with . . . attend[ing] school or job training at night." However, as the trial court informed J.T., "there may be occasions because you are working or because of some other activities that you are participating in that the Deputy Probation Officer is fine with you being out pas[t] 10:00," the "key is that you need to make sure that that approval is provided before you are out" after curfew.

For the first time on appeal, J.T. contends the curfew condition is unconstitutionally overbroad and infringes on his right to travel. For the reasons set forth above, there is no merit to this belated argument. The

10

condition was imposed specifically to promote J.T.'s rehabilitation by providing some structure to his daily life.  Additionally, the condition is reviewable after 45 days, and as discussed above, J.T. is allowed to go out after 10:00 p.m. or before 6:00 a.m. so long as he seeks preapproval or is accompanied by his parents.

### Gang-Related Condition

The probation department recommended the following gang-related condition (condition No. 13) which we have, for ease of reference, broken into lettered subparts: (a) J.T. "shall not knowingly associate with anyone known to the minor to be a gang member or associated with a gang, or anyone who the [probation officer] informs [him] to be, a gang member or associated with a gang;" (b) *J.T. "shall not knowingly participate in any gang activity and shall not visit or remain in any specific location known by [him] to be, or that the [probation officer] informs [J.T.] to be, an area of gang-related activity*;" (c) "*[J.T.] shall not knowingly possess, display, or wear any insignia, articles of clothing, caps, hats, jackets, shoes, belts, flags, scarves, bandanas, shirts, logos, emblems, badges, buttons, music, photographs, pictures, art, drawings, images, lyrics, symbols, colors, numbers, monikers, patterns or brands, nor display any gang signs or gestures that [he] knows to be, or that the [probation officer] informs [him] to be, gang-related*;" (d) "[J.T.] shall not knowingly obtain any new tattoos that [he] knows to be, or that the [probation officer] informs [him] to be, gang-related;" (e) "[J.T.] shall not knowingly use, post, display, or transmit on any social media networking site or transmit via any electronic means, including all electronic communication devices, whether it is yours or someone else's, any symbols, graffiti, pictures, photos, drawings, lyrics, symbols, images, hand signs or gestures, or other

11

items or information, that [he] knows to be, or the [probation officer] informs [him] to be, gang-related, unless for use as part of a court-ordered or school-related educational paper, or other research for educational purposes which have been approved by the [probation officer]; **For the purposes of these probation conditions, the words 'gang' and 'gang-related' mean a 'criminal street gang' as defined in penal code section 186.22, subdivision (f).**" (Boldface & italics added.)

Before imposing the gang conditions, the trial court heard from counsel. Defense counsel objected to the gang conditions "not under the 'Lent' test" but rather "on vagueness and overbroad grounds" because "it is impossible for [J.T.] to know when these items, many of which are commonly possessed, carried and worn, are actually gang related." Counsel recognized there was a "knowledge requirement" but did not believe the "Probation Officer informing the minor to be gang-related" language met "constitutional muster because it doesn't appear to me that there would be any restraint on a Probation Officer from directing [J.T.] not to wear or listen to certain music or possess certain artwork that in the Probation Officer's opinion is gang-related." Counsel also asserted "some" of the prohibited items "related to free expression and terms of music, artwork, clothing, et cetera, so I would also register an objection under the First Amendment to No. 13 as phrased."

In imposing the condition, the trial stated, "I know these are the standard gang terms that seem to be appropriate. There's no question that there was gang-related activity in the underlying offense. [¶] I also understand when [J.T.] initially was adjusting to DJJ, that he was suffering some influences and was falling into some gang-related type interactions, and that, [J.T.], luckily you changed, and that's why you are being discharged, so the gang terms are important. [¶] . . . I think they are important for your

rehabilitation, and to make clear that you need to stay as far a[way] from any gang-related activity that you possibly can. And there was a sustained gang enhancement." The court then went through each part of the gang condition, and stated "So the key is if you know certain things are gang related, you are not to possess them or wear them. If the Deputy Probation Officer tells you specifically that there are certain things you should not be wearing or other things of that nature because they are gang related, don't do it. [¶] [J.T.], because of the fact that there is no question that you have engaged in gang-related activities before, you know a number of things that you should not be doing. The Deputy Probation Officer is potentially going to tell you to avoid other things, but this is not a situation where you are entirely naïve of what is gang related." In any event, the court stated, "gang related" meant a "criminal street gang as defined by Section 186.22, subdivision F."

On appeal, J.T. challenges several aspects of the gang-related conditions, specifically condition No. 13 "(c)" and "(b)" (see the bold and italicized portions), as unconstitutionally overbroad and vague.

### *Condition No. 13 "(c)"*

He asserts condition No. 13 "(c)" is vague because it contains "a long litany of items" he must avoid, and it is "impossible for [him] to know when these items, many of which are commonly possessed, carried, and worn, are gang-related."

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' [Citation.] The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are 'embodied in the due process clauses of the federal and California Constitutions. (U.S. Const., Amends. V, XIV; Cal. Const., art. I, § 7.)' "

13

(*Sheena K., supra*, 40 Cal.4th at p. 890.)  "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness."  (*Ibid.*)  Probation conditions are given " ' "the meaning that would appear to a reasonable, objective reader." ' "  (*In re I.V.* (2017) 11 Cal.App.5th 249, 261.)  Thus, the mere fact that there " ' " 'may be difficulty in determining whether some marginal or hypothetical act is covered by [a condition's] language' " ' " does not render the condition "impermissibly vague."  (*Ibid.*)

Courts have routinely found gang conditions that incorporate a knowledge requirement to pass constitutional muster.  (See, e.g., *In re Vincent G.* (2008) 162 Cal.App.4th 238, 247 [probation condition modified to direct the defendant " "not to possess, wear or display any clothing or insignias, emblems, badges, or buttons that you know, or that the probation officer informs you, are evidence of affiliation with or membership in a gang' "]; *In re Justin S.* (2001) 93 Cal.App.4th 811, 816 [probation condition modified to forbid the minor's association " 'with any person known to you to be a gang member' "].)

Here, as J.T. acknowledges, the condition at issue includes such a requirement.  It specifically states J.T. must not knowingly possess, wear, or display such items that he "knows to be, or that the [probation officer] informs [him] to be, gang-related."  J.T. cites no legal authority indicating this knowledge requirement is insufficient.[7]

---

[7]  For this reason, we also reject J.T.'s assertion that condition No. 13 "(c)", as written, "gives the probation officer no 'explicit standards' to ensure this condition does not result in 'arbitrary and discriminatory enforcement.' "  Each portion of the gang condition contains a knowledge requirement and is

14

J.T. also asserts specific terms used within the condition are vague, including the terms "music," "lyrics," "patterns," "brands," and "monikers."

For example, he provides several definitions for the term "pattern," noting it can be used in reference to clothing but may mean " 'a form or model proposed for imitation,' " " 'the grouping made on a target by bullets' " or " 'a reliable sample of traits . . . or other observable characteristics of a person, group, or institution' " among others. In the context of the gang-related condition, he maintains he does not know whether he should avoid "knowingly possess[ing], display[ing], or wear[ing]" a "pattern" of "clothing," "[a] behavioral pattern," or a "patten of rhythm and rhyme?"

" 'When interpreting a probation condition, we rely on "context and common sense." . . .' [Citation.] Probation terms must be 'given "the meaning[s] that would appear to a reasonable, objective reader" ' [citation], and interpreted in context and with the use of common sense [citation]. A probation condition 'should not be invalidated as unconstitutionally vague " ' "if any reasonable and practical construction can be given to its language" ' " ' or if its terms may be reasonably certain by reference to ' " 'other definable sources.' " ' " (*People v. Rhinehart* (2018) 20 Cal.App.5th 1123, 1129.) In context and in light of common sense, the words J.T. complains of are specific enough to provide him notice of what is required of him.

Next, J.T. maintains the inclusion of the terms "music" and "lyrics" is overbroad and thus violates his First Amendment rights. He maintains this condition impermissibly "regulat[es] what music and lyrics" he may listen to

---

sufficiently specific so as to put J.T. on notice of what is required of him and to prevent arbitrary enforcement.

and bars him "from listening to music about important social issues that may affect him."

However, the condition does not impose such limitations. Rather, it prohibits him from "knowingly possess[ing], display[ing], or wear[ing]" music or lyrics he "knows to be, or that the [probation officer] informs" him to be gang related. It does not prohibit him from listening to any music regardless of content. Even assuming that were the case, the condition is sufficiently narrow so as to leave J.T. with a wide range of music available to him to enjoy, including many rap and hip-hop songs.

### Condition No. 13 "(b)"

J.T. contends the portion of the second gang-related condition No. 13 "(b)" prohibiting him from "knowingly participat[ing] in any gang activity" and "visit[ing] or remain[ing] in any specific location known by the minor to be, or that the [probation officer] informs the minor to be, an area of gang-related activity" is unconstitutionally vague and overbroad and should be modified" in accordance with *Victor L., supra*, 182 Cal.App.4th 902.

In *Victor L.*, Division Two of this court held that a condition ordering the minor to stay away from area known to him for "gang-related activity" was unconstitutionally vague, even with a knowledge requirement, because the condition was not sufficiently precise to inform him of what locations or activities were prohibited. (*Victor L., supra*, 182 Cal.App.4th at pp. 913-917.) The court modified the condition to read, " 'The Minor shall not be in any areas where gang members are known by Minor to meet or get together, or areas known by Minor for gang-related activity (or specified by his probation officer as involving gang-related activity), nor shall he participate in any gang activity.' " (*Id*. at pp. 931-932, italics omitted.)

16

The Attorney General "submits that, as ordered, the complained about probation condition inherently contemplates advance notice by probation." He also asserts J.T. has "fair notice of what activity is prohibited" given that he is "well-versed in gang-activity." Nonetheless, the Attorney General "has no objection to modification of the condition as requested."

We shall follow the approach of *Victor L.* and remand the matter for further refinement of this condition.

### *Police-Contact Condition*

J.T. is also required to "[n]otify probation of any police contacts within 24 hours." (Condition No. 16.)

Citing *People v. Relkin* (2016) 6 Cal.App.5th 1188 (*Relkin*) and *In re I.M.* (2020) 53 Cal.App.5th 929 (*I.M.*), J.T. argues, and the Attorney General concedes, this condition is unconstitutionally vague and overbroad.

In *Relkin, supra*, 6 Cal.App.5th 1188, the appellate court held that a probation condition requiring the defendant to " 'report to the probation officer . . . any . . . contacts with or incidents involving any peace officer' " was unconstitutionally vague and overbroad because it failed to give fair warning of what constituted a "contact." (*Id.* at pp. 1196-1197.)

In *I.M., supra*, 53 Cal.App.5th 929, Division Three of this court held a virtually identical condition as the one imposed on J.T. here—that the minor "report any police contacts" to the probation officer within 24 hours—was unconstitutionally vague and overbroad. (*Id.* at p. 936.) The court, relying on *Relkin*, remanded the matter to the juvenile court to determine whether to strike or modify the condition to avoid constitutional defects. (*Id.* at pp. 936-937)

We agree with these two courts and remand the matter to the juvenile court to either modify or strike the condition in accordance with *I.M., supra*, 53 Cal.App.5th 929.

## DISPOSITION

This matter is remanded to the juvenile court with directions to either strike or modify the probation requirements that read:  J.T. "shall not knowingly participate in any gang activity and shall not visit or remain in any specific location known by [him] to be, or that the [probation officer] informs [J.T.] to be, an area of gang-related activity" and J.T. shall "Notify probation of any police contacts within 24 hours."  In all other respects, the order is AFFIRMED.

_____
Banke, J.

We concur:

_____
Humes, P.J.

_____
Margulies, J.

A160626, In re JT

19