Filed 8/24/23  P. v. Murray CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096839 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE017609) |
| v. | |
| JUSTIN MURRAY, | |
| Defendant and Appellant. | |

In a consolidated criminal action, a jury found defendant Justin Murray guilty of receiving a stolen motorcycle, theft of a John Deere Gator,[1] burglary of a high school, and being a felon in possession of a firearm and ammunition.  He received three years four months in state prison.

---

[1] The phrases "John Deere Gator" and "golf cart" were used interchangeably throughout the trial proceedings.  This opinion refers to the vehicle as a "Gator" for consistency.

1

On appeal, defendant contends: (1) the trial court abused its discretion by granting the People's motion to consolidate and that consolidation actually resulted in a gross unfairness at trial that deprived him of due process; (2) the trial court erred by allowing an officer to testify that the recovered firearm was an untraceable "ghost gun"; (3) these alleged errors were cumulatively prejudicial; and (4) that he is entitled to an additional day of actual presentence credit.

We agree with defendant's credit claim but reject his remaining contentions. We conclude that consolidation was proper in that the charges in both cases were of the same class, and that this did not cause undue prejudice because evidence in each case was cross-admissible on the issue of intent. Even if not cross-admissible, none of the charges were particularly inflammatory, neither case was stronger or weaker than the other, and neither case involved capital offenses, and failure to sever the gun charge from the theft related charges did not actually result in gross unfairness or deprive defendant of due process. We further conclude that any alleged error in admitting the ghost gun testimony was harmless on this record and that defendant has not shown cumulative error.

We have, however, identified errors in applying Penal Code[2] section 654 to counts 4 and 7, and in imposing mandatory assessments. We shall modify the judgment to impose and stay the midterm for each of those counts and to impose the correct assessment amounts given defendant's five counts of conviction. We shall affirm the judgment as modified.

## BACKGROUND

A.   *Defendant's Two Criminal Matters*

Defendant was originally charged in Sacramento County case No. 21FE017609 (the motorcycle case) with stealing a motorcycle in July 2021 and receipt of that same

---

[2] Further undesignated statutory references are to the Penal Code.

stolen motorcycle. In Sacramento County case No. 22FE002283 (the burglary case) defendant was charged with second degree burglary of a high school in February 2022, theft of the school's Gator, receipt of the stolen Gator, and being a felon in possession of a firearm and ammunition.

After the trial court granted the People's pretrial motion to consolidate, an amended consolidated information charged defendant with two counts of unlawfully driving or taking a vehicle worth more than $950 without the owner's consent (Veh. Code, § 10851, subd. (a); count 1 (motorcycle) & count 4 (Gator)), two counts of receiving stolen property (§ 496d, subd. (a); count 2 (motorcycle) & count 5 (Gator)), second degree burglary (§ 459; count 3), and being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 6) and ammunition (§ 30305, subd. (a)(1); count 7). Defendant pled not guilty to the charges.

B. *Consolidated Jury Trial*

1. *Evidence Related to the Motorcycle Case*

At trial, Fulton El Camino Park District Police Sergeant Taylor Magaziner testified that in July 2021, he contacted defendant in the driveway of defendant's Sacramento home. Near the garage, Sergeant Magaziner saw a small green motorcycle with an ignition that had been altered so it could be started without a key; the ignition was covered by a cell phone mount that concealed the alteration, and the motorcycle's license plate was bent to obscure the numbers. Defendant told Sergeant Magaziner that a friend, whom he did not identify, had dropped off the motorcycle for him to work on.

A.H. had reported the motorcycle stolen in October 2020. He did not know defendant and had not given defendant permission to have his motorcycle.

A.H. had originally purchased the motorcycle for $5,600 and had upgraded its exhaust. At the time it was stolen, the motorcycle had about 700 miles on it; when it was recovered, it had 3,814 miles on it and had been damaged and altered.

3

Defendant's backyard contained two more motorcycles as well as a shed that had numerous tools, including tools often used to grind serial numbers on vehicles, and various motorcycle parts. A stool in the shed contained the words "chop shop," and "crime pays" was written on a shed wall. According to Sergeant Magaziner, the phrase "chop shop" commonly referred to a building or place where stolen vehicles are taken to illegally remove parts for resale on the black market or to put on other vehicles to disguise or otherwise make the vehicles unidentifiable.

Defendant's stepfather denied telling officers that the green motorcycle was defendant's. He claimed he told officers that defendant had worked on the motorcycle for a while. Sergeant Magaziner disputed the stepfather's testimony, testifying that the stepfather told him that the green motorcycle was defendant's bike and that defendant had been driving it for the past few weeks; the stepfather did not tell Sergeant Magaziner that defendant had been working on the motorcycle.

2. *Evidence Related to the Burglary Case*

Sacramento Police Officer Justin Serra testified that on February 5, 2022, he investigated a reported burglary and vehicle theft at a high school. A neighbor's surveillance video showed that shortly after midnight a white pickup truck drove towards the high school and parked nearby. Two people wearing dark clothing and carrying backpacks walked towards a gated entrance to the school.

Around 12:45 a.m., school video surveillance showed two individuals walking towards the school's landscape workshop where they cut the wires for the lighting and power and disabled the workshop alarm system. Shortly thereafter, they began removing equipment from inside the workshop towards the school entrance gate, including a John Deere Gator towing a blue branch grinder, a riding lawnmower, and a second John Deere Gator with the tailgate loaded with equipment.

Around 2:00 a.m., the neighbor's video surveillance showed a green and yellow utility vehicle towing something blue, and, a few minutes later, the parked white pickup

4

truck turned on its headlights and drove out of camera view. Approximately one-half hour later, a video showed the same two persons, now without backpacks, walking back towards the high school. Shortly after 3:00 a.m., the video captured two vehicles, a riding lawn mower and a green and yellow utility vehicle coming from the direction of the high school.

Around 3:00 a.m., J.G. was driving near his home by the high school when a green and black "golf cart," or Gator, with yellow letters and no lights turned in front of him. Thinking it was unusual, J.G. turned his car around and began following the Gator, which had several objects piled in the back. The person driving the Gator, later identified by J.G. as defendant, was a white male wearing a black hoodie and he had a black mask or neck gaiter covering his lower face.

J.G. saw the Gator turn down an alley and he followed. While driving down the alley, J.G. did not initially see the Gator, but he noticed a paint sprayer laying on the ground near a speed bump in the alley. Suddenly, the man he had seen driving the Gator came running back towards him. As the man ran past J.G.'s car, J.G. noticed the Gator parked behind a nearby dumpster located at the end of the alley; the Gator had a generator in the back along with other items. J.G. called police.

Sacramento County Police Officer Joshua Gardner responded to the scene shortly after 3:00 a.m. and contacted defendant, who matched J.G.'s description of the suspect, about a block away from the alley. Defendant was dressed in a black hooded sweatshirt that had a neck gaiter or face mask sewn into the collar area and black pants. Defendant had pepper spray, a pocketknife, a flashlight, and a lighter in his pockets; he had yellow paint on his shoe. During a subsequent field showup, J.G. identified defendant as the man he had seen run past him in the alley.

Officers later determined that the Gator found in the alley belonged to a nearby high school, that a locked entrance gate to the school had been cut, that a lock on the school's landscaping workshop had pry marks, and two of its doors had been opened.

5

Two Gators, a rideable lawnmower, and other tools and equipment, including two generators, were missing from the workshop. The school's decorations shed was also burglarized, and yellow paint had been spilled on the floor.

After defendant was taken into custody, he called his daughter from jail and instructed her not to allow police to search their home and asked her to hide a black duffle bag that was located on top of the dryer.[3] During a second jail call, defendant's daughter told him that officers had obtained a search warrant for the house. When she said she had been unable to hide the duffel bag as he had instructed, defendant said he was "done now" because "there was a gun in there. A real gun."

While executing the search warrant, officers found a black duffel bag on top of the washing machine that contained a loaded firearm without a serial number, which the testifying officer characterized as a "ghost gun" that was untraceable. Officers did not recover any property stolen from the high school during the search.

During trial, defendant stipulated that he suffered a prior felony conviction that prohibited him from possessing ammunition and firearms. He did not testify and called no witnesses on his behalf.

### 3. *Evidence of Prior Bad Acts*

The prosecutor also introduced evidence of a prior theft-related conviction under Evidence Code section 1101, subdivision (b). Sacramento County Police Detective Aaron Borg testified that while investigating vehicle thefts and chop shops in February 2016, he found defendant at a residence with other individuals standing near a stolen, partially dismantled Chevy Caprice; several of the Caprice's parts were laid out on the ground, and its license plate had been cut in half. Various tools that could be used to

---

[3] Defendant stipulated that he was the person heard on the jail phone calls, and recordings of the calls were played for the jury.

dismantle the car were located nearby. Defendant was arrested and later convicted of misdemeanor vehicle theft (Veh. Code, § 10851) based on the incident.[4]

### 4. *Verdicts and Sentencing*

Before deliberations commenced, the trial court granted the prosecutor's motion to dismiss count 5 (§ 496d, subd. (a); receipt of the stolen Gator) in the interest of justice. The jury found defendant not guilty of count 1 (unlawfully driving the motorcycle), but guilty of all remaining charges.

The trial court sentenced defendant to an aggregate term of three years four months in state prison, including the midterm of two years on his felon in possession of a firearm conviction (§ 29800, subd. (a)(1); count 6), and consecutive one-third the midterms of eight months each for receipt of the stolen motorcycle (§ 496d, subd. (a); count 2) and second degree burglary (§ 459; count 3). Under section 654, the court imposed and stayed one-third the midterms of eight months each for theft of the John Deere Gator (Veh. Code, § 10851, subd. (a); count 4) and being a felon in possession of ammunition (§ 30305, subd. (a)(1); count 7).[5] Defendant timely appealed.

---

[4] The trial court instructed the jury that it was admitting the Chevy Caprice incident as evidence for the limited purposes of determining whether defendant had knowledge that the motorcycle found at his residence in July 2021 was stolen, whether the person who took the Gator did so with the intent and motive to deprive the high school of title and possession of the Gator, and whether entry into the school's landscaping shed was with the intent and motive to commit larceny, theft, or any other felony.

[5] The trial court also sentenced defendant on another trailing matter in which he pled no contest to unlawfully possessing methamphetamine; the court imposed and then terminated probation given his prison sentence in the present case.

## DISCUSSION

## I

### *Motion to Consolidate*

Defendant contends the trial court erred under section 954 in consolidating the motorcycle case and the burglary case because evidence in the cases was not cross-admissible on the issue of intent, the charges in the burglary case, including the firearm charges, were likely to unduly inflame the jury, and that, regardless of the relative strength and weakness of each case, trying them together created a substantial risk that the jury would convict based upon the spillover effect of the aggregate evidence. Even if the court correctly granted consolidation, defendant argues reversal is required because the actual impact at trial of joining the cases resulted in gross unfairness that denied him due process.

The trial court did not abuse its discretion in granting consolidation, nor did consolidation render defendant's trial fundamentally unfair in violation of due process.

### A.     *Additional Background*

The People moved to consolidate the motorcycle case and the burglary case under section 954, asserting the offenses in both cases were of the same class of crimes, that evidence in each case as well as evidence of several prior bad acts would be cross-admissible to prove intent, identity, or a common plan or scheme under Evidence Code section 1101, subdivision (b), and that judicial economy favored consolidating the matters.

Defendant opposed the motion, arguing he would suffer substantial prejudice if the cases were joined, that evidence from the separate incidents was not cross-admissible because they involved thefts of two different types of vehicles (a motorcycle and Gator) and had other factual dissimilarities, that other prior bad acts evidence would be inadmissible in both cases, and that the firearm charges in the burglary case would

8

unnecessarily inflame the jury and improperly sway jurors to convict in the motorcycle case, where no firearm charges were alleged.

Following a contested hearing in July 2022 where the parties reiterated their positions, the trial court granted the motion to consolidate, finding joinder was appropriate and its benefits substantially outweighed any prejudice to defendant. In so ruling, the court reasoned that the alleged vehicle theft, receipt of stolen property, and burglary offenses were all of the same class and shared common characteristics, and that evidence in both cases and prior bad acts evidence would be cross-admissible on the issue of intent under Evidence Code section 1101. The court noted that during the preliminary hearing defense counsel implicitly argued that defendant never intended to deprive A.H. of his motorcycle, and that evidence of the motorcycle theft — the punched ignition, the installed ignition bypass switch, the "chop shop" phrase, and the tools — would be relevant to show defendant intended to steal or deprive the high school of the title and possession of the Gator in the burglary.

The trial court rejected defendant's argument that the felon in possession charge was highly inflammatory or that the gun-related charges would trigger the passions or emotions of the jury against him. The court found that neither case was particularly stronger or weaker than the other, and that interests of judicial economy weighed in favor of consolidating the two cases.

B.    *Analysis*

Section 954 governs the joinder of charges. The statute provides in relevant part: "An accusatory pleading may charge two or more different offenses connected together in their commission . . . or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." (§ 954.)

" 'Because consolidation ordinarily promotes efficiency, the law prefers it.' " (*People v. Johnson* (2015) 61 Cal.4th 734, 750 (*Johnson*).) Nevertheless, whenever

9

qualifying offenses are joined together, the court "in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately." (§ 954.)

Here, the requirements for consolidation were met. The motorcycle case and the burglary case each charged defendant with vehicle theft and possession of a stolen vehicle. The burglary charge in the latter case was also based on the intent to steal property from the high school. Thus, " '[t]he element of intent to feloniously obtain property runs like a single thread through the various offenses.' " (*People v. Lucky* (1988) 45 Cal.3d 259, 276.) Because most of the offenses charged in each case were of the same class of offense the cases were properly joinable. (*People v. Landry* (2016) 2 Cal.5th 52, 76 [offenses belong to the same class if they possess common characteristics or attributes].)

While it is true, as defendant argues, that the firearm and ammunition possession offenses in the burglary case were of a different class than any of the theft-related offenses, section 954 does not require that every count be in the same class as or connected in its commission with every other count. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1074-1075.) In *Koontz*, for example, our Supreme Court found that joining a petty theft offense committed on one day with an alleged murder, robbery, and vehicle taking committed on another day was proper where the petty theft belonged to the same class as the robbery and vehicle taking. (*Ibid.*) Thus, section 954 permitted trying all of the charges together.

Having determined that the counts were properly joined, defendant can predicate error on failing to sever the counts "only on a clear showing of potential prejudice" that demonstrates the trial court abused its discretion. (*People v. Kraft* (2000) 23 Cal.4th 978, 1030; *People v. Lucky, supra*, 45 Cal.3d at pp. 276-277; *Johnson, supra*, 61 Cal.4th at p. 750.) He has failed to meet this burden.

10

When determining whether it would be unduly prejudicial to try properly joined crimes, courts look to the following criteria:  (1) evidence of the crimes would not be cross-admissible; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a weak case has been joined with a strong case, or with another weak case, so that the spillover effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case.  (*Johnson, supra*, 61 Cal.4th at pp. 750-751; *People v. Sandoval* (1992) 4 Cal.4th 155, 172-173.)  "If the evidence underlying the charges in question would be cross-admissible, that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges."  (*People v. Soper* (2009) 45 Cal.4th 759, 774-775.)

In this case, defendant attempts to establish prejudice by arguing that, contrary to the trial court's finding, the evidence in each case was not cross-admissible on the issue of intent.  Citing *People v. Ewoldt* (1994) 7 Cal.4th 380, defendant contends evidence of his intent to steal was only disputed in the motorcycle case where he denied knowing the motorcycle was stolen and that the issue of intent to steal was not actually in dispute in the burglary case because defense counsel essentially conceded that whoever broke into the high school had the intent to steal.  Thus, he argues that like in *Ewoldt*, allowing evidence of either case in the other was too prejudicial.

But, as the People note, defendant pled *not guilty* in both cases and denied each of the charges against him.  Defendant's not guilty pleas placed all elements of each offense at issue, including his intent to steal in both cases.  (*People v. Booker* (2011) 51 Cal.4th 141, 171.)

In any event, even assuming defendant is correct that cross-admissibility was lacking, the absence of cross-admissibility alone does not establish the substantial prejudice necessary to mandate severance of the charges.  (*Johnson, supra*, 61 Cal.4th at

11

p. 751.) " 'While we have held that cross-admissibility ordinarily dispels any inference of prejudice, we have never held that the absence of cross-admissibility, by itself, sufficed to demonstrate prejudice.' " (*People v. Marquez* (1992) 1 Cal.4th 553, 572-573; see also § 954.1 ["In cases . . . where two or more accusatory pleadings charging offenses of the same class of crimes or offenses have been consolidated, evidence concerning one offense or offenses need not be admissible as to the other offense or offenses before the jointly charged offenses may be tried together before the same trier of fact"].) Here, no other factor relevant to the assessment of prejudice demonstrates an abuse of discretion. (See e.g., *Johnson,* at p. 751; *People v. Geier* (2007) 41 Cal.4th 555, 577, disapproved on other grounds by *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305.)

First, although defendant asserts that the firearm-related charges in the burglary case were particularly inflammatory, we disagree. (See e.g., *People v. Cunningham* (2001) 25 Cal.4th 926, 985 ["The count alleging that defendant possessed a firearm as an ex-felon is not unusually inflammatory or prejudicial"].) The evidence itself showed the loaded gun was found hidden in a duffel bag in defendant's laundry room, and Detective Stone conceded that there was no evidence the firearm had ever been used to commit another crime. The mild nature of such evidence was unlikely to prejudicially inflame the jury against defendant or cause an inappropriate "spillover effect."

Second, both cases were similarly strong. Indeed, defendant acknowledges that "the evidence in one case was not measurably stronger than the other." For the motorcycle case, defendant was found with the altered motorcycle in his possession at his home, he did not identify the supposed friend from whom he got the motorcycle, and the motorcycle owner testified that he did not know defendant and had not given defendant permission to have his motorcycle. Evidence also showed the ignition switch had been punched, that an ignition override had been installed and disguised under a cell phone holder, and that the license plate had been bent up to obscure the numbers. Defendant's backyard shed included sayings such as "chop shop" and "crime pays," and numerous

12

motorcycle parts and tools that could be used to grind serial numbers were located in the backyard.

For the burglary case, an eyewitness identified defendant in an infield showup shortly after he was arrested near where the stolen Gator was recovered. Defendant's dark clothing matched one of the suspects on surveillance video showing the burglary and the eyewitness description of the person driving the stolen Gator, and defendant was arrested with yellow paint on his shoes, which was found spilled on the floor in one of the school's burglarized sheds.

As for the firearm charges, defendant told his daughter in a recorded jail phone call where the gun was located and asked her to hide it from law enforcement for him, and law enforcement recovered the firearm exactly where defendant described it was hidden.

Third, neither matter involved capital offenses. And joinder did not convert the matter into a capital case.

We likewise reject defendant's claim that even if the trial court did not abuse its discretion in granting consolidation when it ruled on the motion, reversal is nonetheless required because joinder resulted in gross unfairness in violation of his right to due process. While defendant contends that consolidating the cases allowed the prosecutor to more forcefully argue that he was a "thief" and a "liar" than the prosecutor otherwise would have been able to do had the charges been tried separately, evidence of other prior theft-related offenses like the one admitted under Evidence Code section 1101, subdivision (b) here[6] would have been admissible in separate trials and would have allowed the prosecutor to make the same "thief" argument in each trial regardless of consolidation. (Evid. Code, § 1101, subd. (b) [evidence of other crimes is admissible

---

[6] The prosecutor originally sought to introduce 11 instances of prior theft-related convictions or misconduct under Evidence Code section 1101.

13

when relevant for noncharacter purpose of proving some fact other than the defendant's criminal disposition such as intent].)

Furthermore, the outcome at trial belies defendant's claim that he was unduly prejudiced by the admission of the "ghost gun" testimony and evidence showing he encouraged his daughter to hide the gun. (*People v. Merriman* (2014) 60 Cal.4th 1, 46.) The record in fact suggests that the jury decided each count separately as it was specifically instructed to do. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852 ["[j]urors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions"].) The fact that the jury found defendant not guilty of count 1 (theft of the motorcycle) tends to show that "the jury was capable of, and did, differentiate among defendant's crimes" (*People v. Jones* (2013) 57 Cal.4th 899, 927), and that it did not improperly aggregate the evidence against him.

Given the above, we conclude the trial court did not abuse its discretion in granting the motion to consolidate the motorcycle case with the burglary case. Moreover, upon reviewing events *after* the court's ruling, we do not find joinder actually resulted in gross unfairness or denied defendant his constitutional right to due process and a fair trial.

## II

### *Admission of Ghost Gun Testimony*

Defendant argues that the trial court erred by permitting Detective Stone to testify, over defense counsel's relevancy and Evidence Code section 352 objections, that the gun found in defendant's laundry room was a "ghost gun" without a serial number, which made the gun untraceable and illegal. He contends that whether the gun had a serial number was irrelevant because serialization was not an element of the felon in possession offense, and the testimony allowed the prosecutor to prejudicially highlight the nature of the gun as a "crime gun."

14

Only relevant evidence is admissible.  (Evid. Code, § 350.)  " 'Relevant evidence' " is "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (Evid. Code, § 210.)  "A trial court has 'considerable discretion' in determining the relevance of evidence."  (*People v. Merriman, supra*, 60 Cal.4th 1, 74.)

We review a trial court's admission or exclusion of evidence for abuse of discretion.  (*People v. Alvarez* (1996) 14 Cal.4th 155, 201.)  A trial court abuses its discretion where its ruling "is 'so irrational or arbitrary that no reasonable person could agree with it.' "  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)  Even if a trial court errs in admitting evidence, however, such error is one of state law that may be found harmless if it is not reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.  (*People v. Marks* (2003) 31 Cal.4th 197, 227.)  We do not presume prejudice; instead, defendant must affirmatively demonstrate prejudice.  (*Hernandez v. County of Los Angeles* (2014) 226 Cal.App.4th 1599, 1616.)

Here, defendant argues that the ghost gun testimony was irrelevant to the felon in possession charge, which required proof of a prior felony conviction and ownership or knowing possession, custody, or control of a firearm.  (§ 29800, subd. (a); *People v. Snyder* (1982) 32 Cal.3d 590, 592.)  He points out that for purposes of the offense, a firearm is defined as "a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion."  (§ 16520.)  The People counter that Detective Stone's testimony was relevant because it described the firearm he found at defendant's home, and also helped establish defendant's intent and knowledge regarding the gun.

It is true, as defendant argues, that the felon in possession offense does not include serialization as an element nor is serialization an element of the definition of a firearm

15

under the instructions given to the jury.  However, testimony about the nature of the gun may have relevance to show whether it was a firearm and testimony about how it was made, and the lack of a serial number may be relevant to show knowledge and consciousness of guilt.  Under these facts, the trial court did not abuse its discretion in overruling the objection.

But even if we assume without deciding that the ghost gun evidence was not relevant for any purpose, admitting Detective Stone's testimony was harmless because it is not reasonably probable that excluding the evidence would have resulted in a more favorable outcome.  As the prosecutor pointed out, and defense counsel conceded, defendant stipulated that he had a prior felony conviction and the jail phone calls overwhelmingly established that defendant knowingly possessed or had control of a firearm.  And defendant himself acknowledges on appeal that it is not reasonably probable that excluding the ghost gun testimony would have impacted the jury's guilty verdicts for the firearm and ammunition charges.

Defendant's contention that the evidence negatively affected the jurors' consideration of the other charges is mere speculation, which is belied by the jury's verdict acquitting defendant of unlawfully driving or taking the motorcycle.  And, as discussed above, the evidence overwhelmingly supported the jury's guilty verdicts on each of the theft-related charges.  Thus, any alleged error in admitting the ghost gun testimony was harmless on this record because it is not reasonably probable that defendant would have obtained a more favorable outcome had the testimony been excluded.

### III

### *Cumulative Error*

Defendant contends that even if no single error compels reversal, the alleged errors cumulatively rendered the trial unfair, requiring reversal.  We disagree.

16

In examining a claim of cumulative error, the critical question is whether defendant received due process and a fair trial. (*People v. Cain* (1995) 10 Cal.4th 1, 82.) "Defendant was entitled to a fair trial, not a perfect one." (*Ibid.*)

Here, while an isolated instance of evidentiary error in defendant's trial may have occurred, we do not believe it affected its fairness. Nor do we believe that it is reasonably probable that the jury would have reached a more favorable result in the absence of the error. (*People v. Partida* (2005) 37 Cal.4th 428, 439; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Having found that the cases were properly joined, and that any alleged error in admitting the ghost gun testimony was not prejudicial, there is no individual error to accumulate. We reject defendant's cumulative error argument accordingly. (*People v. Cook* (2006) 39 Cal.4th 566, 608.)

## IV

### *Presentence Custody Credits*

Defendant contends the trial court erred in calculating his presentence custody credits. The People concede, and we agree, defendant is entitled to one additional day of presentence custody credit.

A defendant is entitled to presentence custody credits for all days served in jail including the day of arrest and the day of sentencing. (§ 2900.5, subd. (a); *People v. Bravo* (1990) 219 Cal.App.3d 729, 735; *People v. Smith* (1989) 211 Cal.App.3d 523, 526-527.)

Here, according to the probation report, defendant was in custody in the Sacramento County jail in the present matter for one day in July 2021, four days in November 2021, and 196 days in 2022 for a total of 201 actual days of presentence custody. At sentencing, however, the trial court only awarded defendant 200 days of actual credit. Defendant is thus entitled to one additional day of actual credit.

We shall modify the judgment to award defendant one additional day of actual credit and shall direct that the abstract of judgment be corrected to reflect 201 days of actual credit and 200 days of conduct credit for a total of 401 days of credit.

## V

### *Section 654*

Section 654 prohibits multiple punishments when a defendant is convicted of several crimes based on a single act or omission. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) It also applies when a defendant's indivisible course of conduct violates multiple statutes. (*People v. Corpening* (2016) 2 Cal.5th 307, 311-312.) As amended effective January 1, 2022, the statute provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a); Stats. 2021, ch. 441, § 1.) Where section 654 applies, "the trial court must impose a full term and stay execution of that term." (*People v. Relkin* (2016) 6 Cal.App.5th 1188, 1198.)

Although not raised by the parties on appeal, we have identified a sentencing error that requires correction. After finding that section 654 applied to both count 4 (theft of the Gator) and count 7 (felon in possession of ammunition), the trial court imposed eight months for each count (one-third the midterm) and then stayed the sentences under section 654. This was error, which resulted in an unauthorized sentence. (*People v. Cabrera* (2018) 21 Cal.App.5th 470, 477 [a court with jurisdiction may correct an unauthorized sentence at any time].)

"The one-third-the-midterm rule of section 1170.1, subdivision (a), only applies to a consecutive sentence, not a sentence stayed under section 654." (*People v. Cantrell* (2009) 175 Cal.App.4th 1161, 1164.) When a sentence is required to be stayed under section 654, the trial court should impose a full-term sentence to ensure the "defendant's punishment is commensurate with his criminal liability" if the stay is lifted. (*Cantrell*, at

18

p. 1164.)  Accordingly, we shall modify the judgment to impose the presumptive midterm of two years each for defendant's convictions for theft of the Gator and being a felon in possession of ammunition, which are both stayed under section 654.  (§ 1170, subds. (b)(1) & (h).)

## VI

### *Miscalculation of Court Assessments*

Defendant was found guilty of five offenses.  At sentencing, the trial court orally imposed a $240 court facilities assessment (Gov. Code, § 70373) and a $320 court operations assessment.  (§ 1465.8.)  The court miscalculated the assessments in pronouncing judgment.

Section 1465.8 provides:  "To assist in funding court operations, an assessment of forty dollars ($40) shall be imposed on every conviction for a criminal offense . . . ."  (§ 1465.8, subd. (a)(1).)  "To ensure and maintain adequate funding for court facilities," Government Code section 70373 mandates that the court impose a $30 assessment on each felony conviction.  (Gov. Code, § 70373, subd. (a)(1).)  Thus, under the relevant statutory provisions, the court security and court facilities assessments should have been $200 and $150, respectively.

The rendition of judgment is an oral pronouncement.  (*People v. Mesa* (1975) 14 Cal.3d 466, 471.)  "Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls."  (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385; *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [appellate courts "that have properly assumed jurisdiction of cases" may "order[] correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts"].)

Here, while the trial court erred in imposing the proper assessment amounts, the abstract of judgment already reflects the correct amounts.  Because the trial court's oral pronouncement controls over the abstract of judgment, we shall modify the judgment to

19

reflect a $200 court operations assessment and a $150 court facilities assessment. As the abstract of judgment already reflects these amounts, it need not be modified regarding the assessments.

## DISPOSITION

The judgment is modified to impose the midterm of two years each on count 4 and on count 7, which sentences are stayed under section 654. The judgment is further modified to award defendant one additional day of custody credit for a total of 201 days of actual credit, and to impose a $200 court security assessment under section 1465.8 and a $150 court facilities assessment under Government Code section 70373. As so modified, the judgment is affirmed. The clerk of the superior court is directed to prepare an amended abstract of judgment that accurately reflects the judgment as modified and to forward a copy to the Department of Corrections and Rehabilitation.


              /s/
        HORST, J.*



We concur:


     /s/
DUARTE, Acting P. J.



     /s/
RENNER, J.



_____

* Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.